**UNITED STATES of America, Plaintiff,**

**v.**

**John Manuel WILLIAMS and Eric Demitries Patt, Defendants.**

**No. 89–NCR–89G.**

United States District Court, D. Utah, C.D.

Aug. 15, 1990.

---

Richard D. Parry, U.S. Atty's. Office, Salt Lake City, Utah, for plaintiff.

Harry Caston, Salt Lake City, Utah, for Williams.

Donald C. Hughes, Ogden, Utah, for Patt.

## MEMORANDUM DECISION AND ORDER

J. THOMAS GREENE, District Judge.

Following a jury trial, on January 25, 1990, the defendants in the above entitled case were found guilty of the offense of distributing "crack" cocaine and of two counts of possession with the intent to distribute "crack" cocaine. Defendant Williams was represented by Harry Caston and defendant Patt was represented by Donald C. Hughes, Jr. Counsel for the government was Assistant United States Attorney Richard D. Parry.

**1078**

■ The initial pre-sentence reports filed by the U.S. Probation Office established a sentencing guideline range of 188 to 235 months for defendant Williams and a range of 151 to 188 months for defendant Patt. Both defendants moved the court for departure from their recommended sentences on the ground that their Constitutional rights to due process of law were violated by the manner in which they were singled out for federal prosecution as opposed to state prosecution, thereby becoming subject to minimum mandatory sentences and the federal sentencing guidelines.[1] The court has heard substantial oral argument on two different occasions regarding the due process issue, and the parties have submitted supplemental memoranda on this issue pursuant to a request from the court for further briefing. Being now fully advised, the court sets forth this Memorandum Decision and Order.

## BACKGROUND

Defendants' due process challenge to their proposed sentences is primarily based on the way in which their cases came to be presented to the United States Attorney's office for federal prosecution.[2]

Defendants were arrested in Ogden, Utah on December 9, 1989, through the efforts of local law enforcement officials who were part of the Weber/Morgan Narcotics Strike Force ("Strike Force"). The Strike Force is an intergovernmental law enforcement group involving funds and personnel from Morgan and Weber counties, municipalities within Weber and Morgan counties, and various agencies of the State of Utah and of the United States

government, including the federal Drug Enforcement Administration ("DEA").

An "Interlocal Agreement" has been entered into by participating entities of the Weber/Morgan Narcotics Strike Force, which contains certain policies and procedures of the Strike Force. This agreement states that the Strike Force was created "for the purpose of investigating and prosecuting the illegal importation, manufacture, use, and sale of controlled substances under state, federal, and local laws." Strike Force Interlocal Agreement, p. 2. The Interlocal Agreement establishes the Strike Force with two governing boards: an Administrative Board, which acts "in an advisory capacity;" and an Executive Board, which is "vested with voting authority to govern and regulate the Strike Force." *Id.* *No attorneys from the U.S. Attorney's office are members of either of the two Strike Force governing boards. Id.* at 2–4.

The Strike Force Interlocal Agreement is silent on the subject of how and on what basis cases are chosen to be referred to the U.S. Attorney's office for federal prosecution, and who is responsible for making this determination. The Interlocal Agreement requires that "[p]articipating jurisdictions shall refer *all* controlled substance investigations within their jurisdiction to the Strike Force. The Strike Force may decline any case for cause." *Id.* at 6. The Interlocal Agreement also provides that "[a]ll participants hereto agree that personnel contributed to the Strike Force shall *follow Strike Force policy and procedures in case of conflict with their own policy and procedure.* Otherwise, each officer shall be bound by his own department's

---

**1.** Both defendants also argued that their recommended sentences violated the Eighth Amendment prohibition against cruel and unusual punishment. The court rejects departure from the defendants' recommended sentences on that basis in light of the recent Tenth Circuit decision in *United States v. Colbert,* 894 F.2d 373 (10th Cir.), *cert. denied,* —— U.S. ——, 110 S.Ct. 2601, 110 L.Ed.2d 281 (1990) (sentence of 264 months for conspiracy to distribute crack cocaine was not cruel and unusual punishment). *See also Hutto v. Davis,* 454 U.S. 370, 102 S.Ct. 703, 70 L.Ed.2d 556 (1982) (sentence of 20 years

for possession of nine ounces of marijuana with intent to distribute was not cruel and unusual punishment).

**2.** Defendants urged several other due process theories in support of departure from their recommended sentences, including the argument that the minimum mandatory statutes and the sentencing guideline scheme causes a de facto displacement of control over sentencing from the judge to the prosecuting attorney. The court does not reach these alternative arguments in light of its decision today.

policies while acting for the Strike Force." *Id.* at 9 (emphasis added). However, the agreement does not set forth any applicable policy or procedure or articulate on what basis cases are to be referred by the Strike Force to either state or federal prosecutors after an individual has been arrested.

The decision by the Strike Force to refer the defendants to the United States Attorney's office for federal prosecution had far reaching consequences inasmuch as these young defendants [3] thereby became subject to mandatory sentences in excess of ten years under the federal sentencing scheme. If the Strike Force had instead chose to refer the defendants to the Weber County Attorney's office for prosecution in state court, and if they had been convicted of these same crimes in state court, the defendants would only face an *indeterminate* sentence of 1 to 15 years under Utah law,[4] but more likely would serve a sentence in accordance with the non-binding sentencing matrix promulgated by the Utah Board of Pardons and used by Utah district courts. The matrix used in state courts and applicable to these defendants was presented to the court. The matrix shows that if defendant Patt had been convicted in state court his recommended prison sentence likely would be eighteen months. Defendant Williams' recommended state sentence likely would be either eighteen or twenty one months, depending on his criminal history calculation.

## DISCUSSION

### I. No Express Strike Force Policy Exists Regarding Referral of Cases for Federal Prosecution

Although federal law authorizes cooperation among federal, state and local agencies concerning traffic in controlled substances,[5] in the case of the Strike Force in question no federal prosecutor was a member of the governing board or had any part in the determination to refer the cases away from state prosecution over to federal prosecution. Law enforcement officials made the decision and exercised the discretion concerning referral for federal prosecution in this case. As previously discussed, the Strike Force Interlocal Agreement does not set forth any stated policy on the subject of how the Strike Force law enforcement officers are to select cases for referral to federal prosecutors.

In this particular case, the defendants could have been referred to the U.S. Attorney's office for any number of reasons, some of which would have been clearly impermissible and others which would have been entirely appropriate. Counsel for defendants suggested that these defendants could have been singled out for federal prosecution and the attending penalties because they are black, or because they are from California, or even because somebody

---

3. Defendant Patt is 19 years old and defendant Williams is 20 years old.

4. Distribution and possession with the intent to distribute cocaine is a second degree felony under Utah law. Utah Code Ann. § 58–37–8(1)(b)(i) (1990). Persons convicted of a second degree felony in Utah may be sentenced to prison for an indeterminate term "not less than one year nor more than 15 years." *Id.* at § 76–3–203(2).

5. Drug enforcement groups such as the Weber/Morgan Narcotics Strike Force are organized for the laudable purpose of coordinating drug interdiction efforts of federal, state and local governments. In fact, federal law specifically *authorizes the United States Attorney General to enter into such cooperative arrangements:*

   (a) The Attorney General shall cooperate with local, State, and Federal agencies concerning traffic in controlled substances and in

suppressing the abuse of controlled substances. To this end, he is authorized to—
(1) arrange for the exchange of information between governmental officials concerning the use and abuse of controlled substances;
(2) *cooperate in the institution and prosecution of cases in the courts of the United States and before the licensing boards and courts of the several States.*

. . . . .

21 U.S.C.A. § 873 (1981 & Supp.1990) (emphasis added). The only guidance that this statute can be construed to provide relative to the issue of referring cases for federal as opposed to state prosecution is that the U.S. Attorney's office is to "cooperate" in this regard. The Utah code contains an almost identically worded statute directing state and local law enforcement officials to cooperate with federal officials. *See* Utah Code Ann. § 58–37–12 (1990).

needed the statistics for a promotion.[6] On the other hand, the government argued that this was one of the largest crack cocaine arrests in Ogden and that the case could have been referred for federal prosecution to make an example of these defendants and hopefully to stop any trend of crack cocaine distribution in that area.

## II. *Procedural Due Process Requires a Referral Policy*

■ Defendants contend that their procedural due process rights were violated in that the decision to refer their cases for federal prosecution as opposed to state prosecution directly impacted their potential sentences in a dramatic way; that the decision was not subject to public scrutiny and easily could have been made in an arbitrary and capricious manner inasmuch as such decisions are not governed by any written policy statement of the Strike Force; and that the decision was made by police officers, rather than by prosecutors in the exercise of prosecutorial discretion.

The Supreme Court stated the following in *Morrissey v. Brewer*, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972), regarding when procedural due process applies:

> Whether any procedural protections are due depends on the extent to which an individual will be "condemned to suffer grievous loss." The question is not merely the "weight" of the individual's interest, but whether the nature of the interest is one within the contemplation of the "liberty or property" language of the Fourteenth Amendment.

*Id.* at 481, 92 S.Ct. at 2600 (citations omitted).

It is not an exaggeration that the decision by the Strike Force police officers to refer a defendant for federal or state prosecution is a substantial and indeed crucial factor in the ultimate sentence that the defendant will receive if convicted. The significance of this decision is magnified by the wide disparity between the mandatory drug crime sentences under federal law as opposed to less severe indeterminate sentences under state law for the same underlying conduct. As noted earlier, if these defendants had been convicted in state court they likely would have received a sentence of less than two years. However, because their cases were referred to the U.S. Attorney's office for federal prosecution, and the prosecutions were successful, defendants face a minimum mandatory sentence of ten years adjusted upwards to between 188 to 235 months for defendant Williams and between 151 to 188 months for defendant Patt due to the sentencing guidelines. Because of the significant impact of the Strike Force's decision to refer the defendants to federal prosecutors on the defendants' potential prison sentences, which involves liberty interests of the highest kind, the court finds that procedural due process protections are required.

## III. *What Process is Due*

■ Having determined that due process applies to the Strike Force referral decision, it remains to be decided what process is due. In this regard, the Supreme Court in *Morrissey* stated:

> Once it is determined that due process applies, the question remains what process is due. It has been said so often by

---

**6.** Defendants also proffered the affidavit of Utah attorney Robert Echard to suggest another inappropriate reason why some drug defendants (though not the defendants in the instant case) are referred to federal authorities as opposed to state authorities. Mr. Echard's affidavit states that he represented an individual in state court on a charge of possession with intent to distribute crack cocaine. At a preliminary hearing in March 1990 held in Utah's Second Circuit Court in Ogden, the prosecuting attorney for the state told Mr. Echard that "it might be in the defendant's best interest to plead to the state charge so that federal charges would not be brought against him making the defendant subject to the potentially greater penalties." Affidavit of Robert Echard at ¶ 5. Using the threat of federal prosecution as a means of encouraging suspects to plead guilty to less severe state charges is an evil that could easily flow from the present lack of any objective factors or policy statement regarding what cases shall be referred to federal authorities. *Cf. United States v. Saunders*, 728 F.Supp. 3, 5 (D.D.C.1989) (J. Green, J.) (critical of U.S. Attorney's office in Washington, D.C. for "using its ability to prosecute in either the federal or District of Columbia courts as a threat to induce defendants to plead to charges brought in Superior Court.").

this Court and others as not to require citation of authority that due process is flexible and calls for such procedural protections as the particular situation demands. "[C]onsideration of what procedures due process may require under any given set of circumstances must begin with a determination of the precise nature of the *governmental function involved* as well as of *the private interest that has been affected by governmental action.*" *Cafeteria & Restaurant Workers Union v. McElroy*, 367 U.S. 886, 895, 81 S.Ct. 1743, 1748, 6 L.Ed.2d 1230, 1236 (1961). To say that the concept of due process is flexible does not mean that judges are at large to apply it to any and all relationships. *Its flexibility is in its scope once it has been determined that some process is due;* it is a recognition that not all situations calling for procedural safeguards call for the same kind of procedure.

*Morrissey v. Brewer*, 408 U.S. 471, 481, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484 (1972) (emphasis added).

In order to determine what process is due, the governmental function involved in the Strike Force referral process must be analyzed. The "private interest that has been affected by governmental action," *id.,* has already been identified.

Traditionally the office of a prosecuting attorney, such as the U.S. Attorney's office, is afforded a wide array of discretion in matters such as whether to prosecute an individual whom police have arrested, what charges to file, and whether to offer a plea agreement. *See generally United States v. Batchelder*, 442 U.S. 114, 124, 99 S.Ct. 2198, 2204, 60 L.Ed.2d 755 (1979); *United States v. Thomas*, 884 F.2d 540, 544 (10th Cir.1989). Similarly, law enforcement officials are afforded discretion in matters of investigation and arrest of criminal suspects. *See, e.g., DeShaney v. Winnebago County Dept. of Social Services*, 489 U.S. 189, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989) (due process not violated by county's failure to protect child against abuse by his father).

The questioned practice in this case, however, does not fit within the discretionary provinces stated above. In this case, police officers, not prosecutors, within the Strike Force are exercising unfettered and unchecked discretion as to which cases to refer to one of two prosecuting entities— the U.S. Attorney's office or the relevant County Attorney's Office. The court is unaware of any expressed policy or factors that the Strike Force considers when making this awesome determination. Of course, police officers in other contexts refer cases to a prosecutor's office. But, where an intergovernmental police agency such as the Weber/Morgan Narcotics Strike Force arrests a suspect, that police agency has to choose between two different prosecuting entities, and the consequences of that referral decision in terms of the suspect's ultimate potential sentence are staggering. Because of this direct impact on the defendants' potential sentences, the wide deference typically afforded to executive branch law enforcement practices is not appropriate to the Strike Force referral decision.

Limiting the discretion of the Strike Force police with regard to the referral decision is especially warranted in light of the limited discretion that the court is afforded under the new federal sentencing scheme. In a 1962 Harvard Law Review article, Professor Sanford H. Kadish analyzed the exercise of police and court discretion in relation to the aims of our criminal justice system. The analysis is equally applicable today. He concluded thusly:

In the police area the existence of discretion may be eliminated in particular situations, or at least substantially reduced, as for example by legislative revision, but in other situations there is no alternative to accepting its existence, given the uses we want to make of the criminal law. As for sentencing discretion, it is plain that the alternative to the existence of discretion is an unacceptable reversion to the strict classical view of a fixed statutory penalty for designated offenders. Few would doubt that this is a price too great to pay for the full extension of the rule of law.

Kadish, *Legal Norm and Discretion in the Police and Sentencing Processes*, 75 Harv. L.Rev. 904, 929 (1962). Congress, through the minimum mandatory sentencing statutes and the sentencing guidelines, has severely curtailed the discretion of the court at sentencing, but no similar limitation has been placed on the exercise of discretion of police officers or prosecutors. This situation results in de facto sentencing by police and prosecutors.

Other federal courts have been troubled by the combination of executive branch discretion and the new federal sentencing scheme. In *United States v. Roberts*, 726 F.Supp. 1359 (D.D.C.1989), *modified, United States v. Holland*, 729 F.Supp. 125 (D.D.C.1990) (H. Greene, J.), the court held the minimum mandatory statutes and the federal sentencing guidelines, unconstitutional on due process grounds, particularly as applied to the District of Columbia.[7] In *Roberts*, the court noted that the U.S. Attorney for the District of Columbia had the ability to exercise unchecked discretion regarding filing cases in the local court system or in federal court. Because of the grossly disparate penalties associated with this determination of forum, and other inequities, the court held that certain federal defendants' due process rights had been violated. The U.S. Attorney's office for the District of Utah does not presently have this choice of forum like its Washington, D.C. counterpart. However, defendants maintain that the discretion vested in Strike Force police officers is not only analogous to the discretion successfully challenged in *Roberts*, but that it presents a worse situation because it is being made by police officers instead of prosecutors.[8]

Court imposed restrictions on the discretion of police officers is often justified in order to safeguard Fifth and Fourteenth Amendment rights to due process of law.[9] *See, e.g. Canton v. Harris*, 489 U.S. 378, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989) (due process requires persons in police custody to receive necessary medical attention); *Hampton v. United States*, 425 U.S. 484, 96 S.Ct. 1646, 48 L.Ed.2d 113 (1976) (Powell, J., concurring) (defense of entrapment could be analyzed under due process clause under certain circumstances); *Fikes v. Alabama*, 352 U.S. 191, 77 S.Ct. 281, 1 L.Ed.2d 246 (1957) (coercive tactics used by police to extract a confession violates due process); *Benigni v. City of Hemet*, 879 F.2d 473 (9th Cir.1988) (excessive and unreasonable police conduct can be basis for due process claim). In addition, courts have often determined that statutes and regulations violate constitutional due process rights if they are so vague as to give police and other governmental officials too much discretion in enforcement. *See, e.g. Kolender v. Lawson*, 461 U.S. 352, 103 S.Ct. 1855, 75 L.Ed.2d 903 (1983) (loitering statute); *Smith v. Goguen*, 415 U.S. 566, 94 S.Ct. 1242, 39 L.Ed.2d 605 (1974) (flag desecration statute); *Marcus v. Search Warrant of Property*, 367 U.S. 717, 81 S.Ct. 1708, 6 L.Ed.2d 1127 (1961) (obscenity statute); *Bence v. Breier*, 501 F.2d 1185 (7th Cir. 1974), *cert. denied*, 419 U.S. 1121, 95 S.Ct. 804, 42 L.Ed.2d 821 (1975) (police discipline policy).

The cases regarding unconstitutionally vague statutes do not directly apply to the instant case inasmuch as the defendants herein are not challenging the language of any particular statute or ordinance with which they have been charged. However, the due process concern in those cases is analogous to defendants' concerns in the instant case. If 21 U.S.C. section 873—the code provision that authorizes the federal

---

7. *See also United States v. Saunders*, 728 F.Supp. 3 (D.D.C.1989) (J. Green, J.); *United States v. Boshell*, 728 F.Supp. 632, 637–38 (E.D.Wash. 1990) (McNichols, J.).

8. In *United States v. Thomas*, 884 F.2d 540 (1989), the Tenth Circuit did reaffirm the exercise of *prosecutorial* discretion in connection with the sentencing guidelines against a claim of violation of due process of law. However, *Thomas* did not involve the rightful scope of

*police* discretion in connection with the guidelines, or the more particular procedural due process question of how cases are to be referred to federal or state prosecutors.

9. The Fourteenth Amendment is also involved in this case inasmuch as state and local law enforcement officials were also responsible for the decision to refer the defendants' cases to the U.S. Attorney's office.

government to become part of entities such as the Weber/Morgan Strike Force—had specified the basis that cases would be referred to federal prosecutors, then the due process problem in this case likely would not exist. The same can be said about the lack of any articulated policy in this regard within the Strike Force Interlocal Agreement.

The actual reasons why the defendants in this case were selected for prosecution in the federal forum is not known, and probably never will be known. However, it is precisely because of the inability to measure the referral decision against an objective and constitutionally permissible standard that this court finds that the defendants' procedural due process rights have been violated.

IV. *Remedy for Lack of Referral Policy*

█ In this case, having no policy and no accountability whatsoever for the important referral decision by Strike Force police officers fosters an atmosphere where this decision can be based upon inappropriate and capricious factors, violative of these defendants' Constitutional rights to due process of law. In fashioning an appropriate remedy applicable to this particular situation, the court is sensitive to the respective provinces of the Executive and Judicial branches under our form of government. As the Supreme Court explained in *United States v. Russell,* 411 U.S. 423, 435, 93 S.Ct. 1637, 1644, 36 L.Ed.2d 366 (1973), "[t]he execution of the federal laws under our Constitution is confided primarily to the Executive Branch of the Government, subject to applicable constitutional and statutory limitations and to judicially fashioned rules to enforce those limitations." Consistent with this broad remedial framework, the court concludes that in order to remedy the procedural due process violation in subsequent cases, the Strike Force must establish and follow a constitutionally permissible policy with regard to what cases it shall refer to the U.S. Attorney's office for federal prosecution. Articulation of the contours of this policy is not for this court to decide, but is left to the discretion of the Strike Force governing boards.

However, until such written policy is promulgated, the court will continue to consider due process challenges to sentences of defendants who are referred for prosecution here by the Weber/Morgan Narcotics Strike Force. This decision has prospective application only, and therefore shall not be construed to affect similarly situated defendants whose cases were referred to the U.S. Attorney's office for the District of Utah by the Weber/Morgan Narcotics Strike Force before the entry date of this decision.

█ Having concluded that defendants' due process rights were violated by the manner in which the Strike Force singled them out for federal prosecution, the court holds that the sentences to be imposed on defendants Williams and Patt will be imposed irrespective of the relevant federal minimum mandatory statutes, 21 U.S.C. section 841(b), and also irrespective of the federal sentencing guidelines issued pursuant thereto by the Federal Sentencing Commission. The state penalties and sentencing matrix for cocaine possession and distribution will be considered at sentencing as well as other pertinent information about the defendants. *See* 18 U.S.C. § 3661 ("No limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence."); *cf. United States v. Boshell,* 728 F.Supp. 632 (E.D.Wash.1990).

IT IS SO ORDERED.