**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Evan Mitchell ANDERSEN,
Defendant–Appellant.**

No. 90–4044.

United States Court of Appeals,
Tenth Circuit.

July 29, 1991.

---

Suzanne K. Cavanaugh, Bountiful, Utah, for defendant-appellant.

David J. Schwendiman, Asst. U.S. Atty. (Dee Benson, U.S. Atty., with him on the

brief), Salt Lake City, Utah, for plaintiff-appellee.

Before LOGAN and BRORBY, Circuit Judges, and BRIMMER, Chief District Judge.*

LOGAN, Circuit Judge.

A jury convicted defendant Evan Mitchell Andersen of manufacturing methamphetamine in violation of 21 U.S.C. § 841(a)(1), knowingly possessing quantities of listed chemicals, L-ephedrine and hydriodic acid, with intent to manufacture methamphetamine in violation of 21 U.S.C. § 841(d) and 18 U.S.C. § 2, knowingly possessing two three-neck, round-bottom flasks with intent to manufacture methamphetamine in violation of 21 U.S.C. § 843(a)(6), and manufacturing methamphetamine within one thousand feet of a public school in violation of 21 U.S.C. §§ 841(a)(1) and 845a. The district court sentenced defendant to 220 months imprisonment after finding that he manufactured approximately 29 kilograms of methamphetamine.

Defendant appeals, arguing (1) that his due process rights were violated when state charges were dropped and he was referred to federal authorities who prosecuted him for a federal crime; and (2) that the court erred in determining the drug quantity relevant to sentencing.

I

On February 17, 1989, defendant was arrested and charged with possessing a controlled substance in violation of Utah law. The arresting officer, Shane Minor, was an Ogden City Police officer and a member of the Weber/Morgan Narcotics Strike Force (Strike Force), "an intergovernmental law enforcement group involving funds and personnel from Morgan and Weber counties, municipalities within Weber and Morgan counties, and various agencies of the State of Utah and of the United States government, including the federal Drug Enforcement Administration." *United States v. Williams*, 746 F.Supp. 1076, 1078 (D.Utah 1990).[1]

After making the arrest, Minor discussed the Strike Force's ongoing investigation of defendant with the Weber County Attorney's office, the United States Attorney's office, and co-Strike Force member and Drug Enforcement Administration agent Charles Hobbs. Thereafter, the Weber County Attorney's office decided to dismiss the state charges and release defendant.

On August 31, 1989, defendant again was arrested based on the Strike Force's investigation. This time, however, defendant was charged with violating federal law. Defendant ultimately was convicted on the six counts of violating the Comprehensive Drug Abuse Prevention and Control Act of 1970, Pub.L. No. 91–513, 84 Stat. 1236, that are the subject of the instant appeal.

Defendant contends that his due process rights were violated when he was tried, convicted, and sentenced in federal rather than state court. He concedes that the prosecutors acted within the scope of their discretion in deciding whether to prosecute him and what charges to bring. But he relies on *United States v. Williams*, 746 F.Supp. 1076 (D.Utah 1990), to argue that due process was violated when members of the Strike Force referred his case for federal prosecution "without the benefit of any articulated policy or written guidelines" addressing referral decisions. Reply Brief of Appellant at 3.[2] Had this alleg-

---

* The Honorable Clarence A. Brimmer, Chief Judge, United States District Court for the District of Wyoming, sitting by designation.

1. Congress has ordered the Attorney General to engage in such intergovernmental cooperation to suppress the trafficking and abuse of controlled substances. *See* 21 U.S.C. § 873. Utah's legislature has issued a similar edict to the Utah Department of Commerce and all Utah law enforcement agencies. *See* Utah Code Ann. § 58–37–12.

2. Although neither defendant nor the government raises the issue, we note that, literally, the *Williams* opinion does not apply in the instant case:

"This decision has prospective application only, and therefore shall not be construed to affect similarly situated defendants whose cases were referred to the U.S. Attorney's office for the District of Utah by the Weber/Morgan Narcotics Strike Force before [August 15, 1990]."

edly unconstitutional behavior not occurred, defendant argues that under Utah law the state court could have sentenced him to no more than five years imprisonment, in contrast to the more than eighteen years he received on the federal convictions.

As defendant correctly concedes, the discretion afforded prosecutors in cases like that before us does not violate due process. Although a prosecutor obviously cannot base charging decisions on a defendant's race, sex, religion, or exercise of a statutory or constitutional right, *see Wayte v. United States,* 470 U.S. 598, 608, 105 S.Ct. 1524, 1531, 84 L.Ed.2d 547 (1985), "so long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute, and what charge to file ... generally rests entirely in his discretion." *Bordenkircher v. Hayes,* 434 U.S. 357, 364, 98 S.Ct. 663, 668, 54 L.Ed.2d 604 (1978) (footnote omitted).

■ When the evidence supports prosecution under different statutes, "[t]he prosecutor may be influenced by the penalties available upon conviction, but this fact, standing alone, does not give rise to a violation of the Equal Protection or Due Process Clause." *United States v. Batchelder,* 442 U.S. 114, 125, 99 S.Ct. 2198, 2205, 60 L.Ed.2d 755 (1979). *See also United States v. Thomas,* 884 F.2d 540, 544 (10th Cir.1989). Indeed, a defendant may be indicted, prosecuted, and convicted in federal court for illegal conduct punishable under a federal statute even after a state court has convicted defendant under a state statute for the same conduct. *Abbate v. United States,* 359 U.S. 187, 194–95, 79 S.Ct. 666, 670–71, 3 L.Ed.2d 729 (1959).

Applying these principles, we have rejected the argument that a prosecutor's

control over charging decisions and plea bargaining practices violates due process. *See United States v. Hatch,* 925 F.2d 362, 363 (10th Cir.1991); *Thomas,* 884 F.2d at 544. Other courts have rejected due process challenges similar to that before us now, holding that a prosecutor's decision to transfer a case from state to federal court, thereby subjecting the defendant to a much harsher potential penalty, does not violate the Constitution. *See United States v. Frankel,* 739 F.Supp. 629, 630 (D.D.C.1990); *United States v. Smith,* 727 F.Supp. 1023, 1024–25 (W.D.Va.1990).[3] *See also United States v. Raymer,* 941 F.2d 1031, 1042 (10th Cir.1991) (without raising presumption of vindictiveness, state prosecutor may notify defendant who declines to plead guilty that his case will be transferred to federal authorities).

Defendant attempts to distinguish the foregoing cases by emphasizing the influence that the Strike Force's participating officers have on charging decisions:

"In most cases, a police officer refers a suspect to federal prosecutors if the officer is a federal officer making an arrest on federal charges. A state or local officer generally refers a suspect to state prosecutors. There is little room for individual discretion on the part of the officer in selecting the prosecutor or the forum.

An exception to this usual procedure occurs when federal, state and local officers have [organized to interdict narcotics].... Since many drug offenses violate both state and federal laws, a crucial decision must be made [: whether to prosecute in federal or state court.]."

Opening Brief of Appellant at 7–8. In cases involving intergovernmental cooperation and arrests, defendant argues that due process requires written policies to guide

---

*Williams,* 746 F.Supp. at 1083.

Defendant was indicted on federal charges in 1989. Accordingly, it is clear that his case was referred to the United States Attorney's office before the date recited in *Williams.* Because we affirm defendant's sentence on other grounds, we do not address the "prospective application only" aspect of *Williams.*

**3.** A panel of the U.S. Court of Appeals for the D.C. Circuit also rejected such a due process argument in *United States v. Mills,* 925 F.2d 455, 462–63 (D.C.Cir.1991). *Mills* has been vacated and rehearing en banc granted to consider Speedy Trial Act issues. *See United States v. Mills,* 933 F.2d 1042 (D.C.Cir.1991).

the officers in making referral decisions. *Id.* at 18.

■ Although we agree that the Strike Force would be well served by written policies addressing referral decisions, such guidelines are not constitutionally mandated. Defendant's argument misconceives the role Strike Force officers play in the charging decisions made by state and federal prosecutors. Undoubtedly Strike Force officers have some influence on charging decisions. They make the initial decision whether to refer a case to federal or state prosecutors. They also may confer with prosecutors as charging decisions are made. The ultimate decision whether to charge a defendant, and what charges to file, however, rests solely with state and federal prosecutors. *See Bordenkircher*, 434 U.S. at 364, 98 S.Ct. at 668. Absent convincing evidence to the contrary, we will not assume that prosecutors are acting as "rubber stamps" for charging decisions made by the Strike Force.

In the case at hand, it is evident that prosecutors, and not Strike Force officers, made the ultimate charging decision. Strike Force officers initially referred defendant's case for state prosecution. It was the Weber County Attorney, however, who decided to drop state charges because of an ongoing Strike Force investigation of defendant for more extensive illegal activities than those set out in the initial state court charge.[4] In the decision to institute a federal prosecution we do not see here any evidence of a retaliatory motive or an attempt to avoid application of some limitation such as the speedy trial provisions. Accordingly, we reject defendant's assertion that his due process rights were violated when he was tried, convicted, and sentenced in federal rather than state court.

## II

■ Defendant next argues that the district court erred when it imposed sentence based on its finding that defendant manufactured 29.6 kilograms of methamphetamine. He argues that the court erroneously used the amount of precursor chemicals he purchased to arrive at this figure. We review the district court's application of the guidelines for errors of law, giving due deference to its application of the guidelines to the facts. *See United States v. Havens*, 910 F.2d 703, 704 (10th Cir.1990), *cert. denied*, —— U.S. ——, 111 S.Ct. 687, 112 L.Ed.2d 678 (1991). The district court's factual findings are reviewed under a clearly erroneous standard. *Id.*

Although there is other evidence in the record of the span of defendant's drug operation and of the quantity of methamphetamine he manufactured, the court's determination of quantity was based on the total set out in the presentence report. That report estimated that defendant manufactured approximately twenty-nine kilograms of methamphetamine. The twenty-nine kilogram figure is supported by the expert trial testimony of a DEA chemist, Diane McGraph, and evidence that defendant purchased thirty-seven kilograms of the precursor chemical L-ephedrine. Based on McGraph's opinion that defendant used a manufacturing method involving L-ephedrine and red phosphorous, she estimated that defendant could have produced approximately twenty-nine kilograms of methamphetamine from the precursor chemical.[5]

In *Havens*, 910 F.2d at 705, we held that a district court may sentence a defendant based on expert testimony regarding how much methamphetamine could be produced from precursor chemicals possessed by the defendant. Defendant attempts to distin-

---

4. Defendant points to officer Minor's trial testimony to support his assertion that Strike Force officers decided that he would be prosecuted in federal rather than state court. *See* Opening Brief of Appellant at 3. A review of Minor's testimony, however, shows that the decision to drop the state charges against defendant was made by the Weber County Attorney. *See* IV R. 43.

5. McGraph testified that, given the other needed chemicals, defendant could have produced a quantity of methamphetamine approximating eighty percent of the quantity of L-ephedrine involved in a reaction. *See* IV R. 105, 128.

guish *Havens* on two grounds. First, he points to our statement that "[t]he factual question is what each defendant could have actually produced, not the theoretical maximum amount produceable from the chemicals involved." *Id.* at 706. The instant district court did not violate this maxim. The court's quantity determination is supported by McGraph's testimony that the manufacturing method used by *this defendant* could have produced twenty-nine kilograms of methamphetamine from thirty-seven kilograms of L-ephedrine. *See* IV R. 110, 117, 124, 128.

■ Second, defendant argues that *Havens* is inapposite because it involved a charge of *attempt* to manufacture methamphetamine. In *Havens* we noted that:

"Defendant pleaded guilty to attempt to manufacture methamphetamine. Defendant then argued that he should be sentenced for only the trace amounts of finished drugs found with his precursor chemicals. Defendant's position on the amount of drugs is inconsistent with his guilty plea to *attempt* to manufacture. Defendant has not 'attempted' to produce the completed drugs actually found. Had defendant pleaded guilty to actual manufacture, his position would have more validity."

*Id.* at 705 (emphasis in original).

We made this statement after upholding the district court's reliance on expert testimony about the amount of methamphetamine that could have been manufactured from the defendant's precursor chemicals. Moreover, we made the statement simply to "emphasize the weakness of defendant's position." *Id.* Such *dictum* does not render *Havens* inapplicable to the case at hand.

*Havens'* holding is based on United States Sentencing Guidelines § 2D1.4(a) comment. (n. 2), which provides in pertinent part: "Where there is no drug seizure or the amount seized does not reflect the scale of the offense, the sentencing judge shall approximate the quantity of the controlled substance." *See Havens*, 910 F.2d at 705. This application note applies with equal force to the crimes of attempted and actual manufacture of methamphetamine. *See* U.S.S.G. § 2D1.1 comment. (n. 12). Accordingly, the district court did not err when it relied on McGraph's expert opinion in approximating the quantity of methamphetamine actually manufactured by defendant.

### III

Finally, we note that the judgment of conviction in the instant case, *see* I R. tab 84, does not indicate, except in its reference to a special assessment, that defendant was convicted on count six of the indictment against him—manufacture of methamphetamine within one thousand feet of a public school. This is a clerical mistake; defendant was convicted on all six counts of the indictment. *See* I R.Supp. 94–95. Accordingly, we REMAND the judgment and order that it be corrected to specify that defendant was convicted on count six. *See* Fed.R.Crim.P. 36; *United States v. Preston*, 634 F.2d 1285, 1294 (10th Cir.1980), *cert. denied*, 455 U.S. 1002, 102 S.Ct. 1634, 71 L.Ed.2d 869 (1982). We AFFIRM the district court in all other respects.