946 F.2d 896
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee
v.
William A. FREEMAN, Defendant-Appellant.
 No. 91-1011, 91-1012.
 United States Court of Appeals, Sixth Circuit.
 Oct. 4, 1991.
 
 Before MERRITT, Chief Judge, RALPH B. GUY, JR. Circuit Judge, and SILER, District Judge.*
 MERRITT, Chief Judge.
 
 
 1
 The defendant was indicted under 21 U.S.C. 846 for conspiring to distribute cocaine. The government elicited testimony during trial that the defendant was "Tone," the reputed leader of a group, the Hit Hard Crew, that produced and distributed "crack" cocaine in three Michigan cities. The government alleged that beatings were administered by conspirators in furtherance of the conspiracy as a disciplinary measure; there was testimony that several beatings were done with the defendant's knowledge or involvement. Testimony indicated that "beeper" paging systems were used by several members of the group to contact the defendant, and the government introduced into evidence a photograph of a child wearing two beepers. Several witnesses testified about the defendant's and Hit Hard Crew's involvement with crack distribution in Battle Creek; three witnesses affiliated with the Hit Hard Crew identified three men in a photograph taken shortly after a police raid on a Battle Creek crack house and testified as to their past dealings with those men. On this basis, the government introduced against the defendant 315 crystals of crack cocaine, or "rocks," seized in the Battle Creek raid. The defendant was found guilty and under the Sentencing Guidelines received a 480-month sentence from the District Court. The defendant raises on appeal a host of issues relating both to the conduct of the trial and to the application of the Sentencing Guidelines to him.
 
 I.
 
 2
 The defendant's first contentions are primarily evidentiary. He disputes the government's introduction of testimony concerning beatings administered by various Hit Hard Crew members, including the testimony of Mahone, one victim of such a beating. The defendant made no objection to the testimony when it was offered. Our review is limited therefore under Federal Rule of Criminal Procedure 52(b) to determine whether the District Court's admission of this evidence was plain error. See, e.g., United States v. Frost, 914 F.2d 756, 771 (6th Cir.1990); United States v. Causey, 834 F.2d 1277, 1281 (6th Cir.1987). There was sufficient testimony to infer that beatings, such as the one administered to the witness Mahone, were part of the Hit Hard Crew's operations; moreover, several witnesses testified as to defendant's involvement in other beatings and to his knowledge of the Mahone beating. From these references, we are unable to say that the District Court's admission of this evidence rises to the level of plain error.
 
 
 3
 The defendant next challenges testimony suggesting that he was promiscuous, the introduction of a photograph showing a child wearing beepers, and testimony suggesting that he was incarcerated during the time of trial. The essential theory asserted by the defendant is that all of this evidence should have been excluded by the District Court as unfairly prejudicial under Federal Rule of Evidence 403. This Circuit has recognized the impropriety of introducing evidence of illicit sexual conduct against a defendant in some circumstances, United States v. McFadyen-Snider, 552 F.2d 1178, 1182 (6th Cir.1977), but the testimony that the defendant objects to here was not objected to during the course of trial. Moreover, the scope of questioning that elicited witness Reginald Clark's testimony concerning the defendant's extramarital conduct primarily concerned defendant's movements in carrying out drug transactions. The defendant himself introduced evidence of another extramarital affair, during a six-month interlude in Alabama. Although defense counsel objected to the government's proposal to introduce the photo of the child with beepers before trial, this objection was overruled by the District Court, and testimony concerning these beepers addressed only the Hit Hard Crew's use and purchase of beepers for communications. Lastly, no objection was contemporaneously made to witness Gordon Bonaparte's testimony that he, while in jail, had spoken with the defendant shortly before he testified. Although the defense counsel moved for a mistrial on the grounds that the jury could only infer that both Bonaparte and the defendant were incarcerated, no clear basis for such an inference exists. It is by no means readily apparent that both the witness and the defendant had to be in custodial confinement for such an exchange to have taken place. Accordingly, the District Court did not commit plain error in allowing such evidence to be submitted, nor was this evidence so unduly prejudicial as to outweigh its probative value and to require exclusion under Rule 403.
 
 II.
 
 4
 The defendant claims that the District Court erred by admitting evidence of prior cocaine dealings outside the scope of the indictment. Specifically, one witness, Sylvester Smith, testified that he had sold cocaine with "Tone" from December 1985 to December 1987. This period included an eighteen-month time span before the period of time given in the indictment. Against the defendant's motion for mistrial, the government responded that the indictment itself alleged that the conspiracy began "about" May 1987, thus implying some variance in times, and secondly, that Smith's testimony established the "extensive relationship" between Smith and the defendant. The defendant argues that the introduction of this evidence is unduly prejudicial and outweighs its probative effect.
 
 Federal Rule of Evidence 404(b) states:
 
 5
 Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.
 
 
 6
 Smith's testimony readily established existence of a plan, as to the extent of his prior involvement and relations with the defendant, his personal knowledge of the defendant, and identity of the defendant as "Tone," the Hit Hard Crew's leader. This evidence is not so unduly prejudicial to the defendant that it must be excluded regardless of its probative effect. See United States v. Bowers, 739 F.28 1050, 1054-55 (6th Cir.), cert. denied sub nom. Oakes v. United States, 469 U.S. 961 (1984).
 
 III.
 
 7
 The in-court identification of the defendant as "Tone" by the government's first witness, Mahone, is also challenged by the defendant. Counsel moved to conduct a lineup, which the District Court denied. There is no evidence that Mahone was shown a photograph of "Tone" or Freeman before he made his in-court identification. The defendant claims that, despite Mahone's own disclaimer as to his familiarity with "Tone," the in-court identification was unfairly suggestive, yet proffers nothing to support this view.
 
 
 8
 The defendant argues that United States v. Smith, 473 F.2d 1148, 1150 (D.C.Cir.1972), requires a trial court to conduct a lineup to avoid prejudice from an unnecessarily suggestive lineup. However, strictly applied, Smith pertains to the government's use of an identification witness to establish its case in a preliminary hearing. Viewed more broadly, Smith requires a preliminary lineup where the government's case hinges solely upon the testimony of the identification witness. That is not the case here. Five other witnesses following Mahone unhesitatingly and convincingly identified the defendant as "Tone." Under the totality of the present circumstances, we do not find the identification unduly suggestive. See generally Neil v. Biggers, 409 U.S. 188, 199-200 (1972); United States v. Causey, 834 F.2d 1277, 1286 (6th Cir.1987). The District Court committed no error of substance in declining to stop the trial and conduct a lineup. See Fed.R.Crim.P. 52(a).
 
 IV.
 
 9
 The defendant contends that the District Court's denial of a jury instruction on the credibility of drug-addicted witnesses was error, as was the court's refusal to instruct the jury on defendant's purported withdrawal from the conspiracy. In neither instance do we find that the District Court's failure to give the requested orders to be plain error. There was no testimony that any of the government's witnesses were currently addicts, regardless of their past drug use.
 
 
 10
 The defendant claims that the testimony concerning his withdrawal from the conspiracy adequately shows that he effectively withdrew, stopping his involvement with the Hit Hard Crew during the six months that he resided in Alabama. The record, however, is devoid of any evidence that he terminated his involvement with the Hit Hard Crew's activities, other than his bare assertion that his testimony showed that he was completely "out of the picture." Once a person becomes a member of a conspiracy, he or she may be held responsible for all actions taken by co-conspirators. United States v. Adams, 742 F.2d 927, 943-44 (6th Cir.1984). We have held that withdrawal from a conspiracy requires proof of some affirmative action by the defendant to disavow or to otherwise defeat the purposes of the conspiracy. United States v. Battista, 646 F.2d 237, 245 (6th Cir.1981). The defendant offered no evidence to meet this burden or to otherwise demonstrate any cessation of activity by the Hit Hard Crew. The District Court's refusal to grant the requested instruction was not plainly erroneous.
 
 V.
 
 11
 The decision to prosecute in federal, rather than state, court is disputed by the defendant, who argues that his due process rights were violated. In support of his position, the defendant cites United States v. Williams, 746 F.Supp. 1076 (D.Utah 1990). However, unlike Williams, in which an intergovernmental strike force between local, state and federal officials systematically investigated and arrested drug suspects and referred them to federal prosecutors, with a concomitantly harsher potential impact in terms of sentencing, there was no testimony here whatsoever to demonstrate that a similar "strike force" or intergovernmental decision process led to the prosecution of Freeman by federal authorities, apart from asserting that the federal investigation began solely from the arrest of one witness, Mahone, by local police. The defendant's reliance upon Williams is further undercut by the reversal of United States v. Roberts, 726 F.Supp. 1259 (D.D.C.1989), upon which Williams relies heavily, by United States v. Mills, 925 F.2d 455 (D.C.Cir.1991).
 
 VI.
 
 12
 The government's introduction of 315 crack "rocks" seized in a raid in Battle Creek against the defendant is also challenged. The defendant argues that his connection to the four individuals arrested with the 315 rocks is too remote for the evidence to be admissible. Although no objection was made, the defendant argues plain error. See Fed.R.Crim.P. 52(b). He essentially argues that the evidence seized in Battle Creek is inadmissible because this evidence did not concern him and was not in furtherance of the conspiracy with which he stands charged.
 
 
 13
 Four witnesses testified as to the identities of the men arrested in Battle Creek; one witness specifically identified one of the arrested men as a member of the Hit Hard Crew, while another testified that he had driven to Battle Creek for Tone in the past to of sell cocaine. Another of the four witnesses testified that "Tone" sold cocaine to three of the four Battle Creek defendants, which they then sold in Detroit.
 
 
 14
 While each piece of this testimony, standing alone, would be insufficient to support an inference of the defendant's involvement with the Battle Creek group, taken as a whole, we believe that the testimony of the five witnesses identifying the Battle Creek defendants and describing defendant's prior relations with them raises a somewhat weak inference that rocks were part of the conspiracy charged. The probative value of the evidence is for the jury. Where similar testimony of related transactions in a drug conspiracy have been found to be in furtherance of the ongoing conspiracy, this Circuit has held such evidence to be admissible. See United States v. Adams, 742 F.2d 927, 942-43 (6th Cir.1984), cert. denied sub nom. Freeman v. United States, 469 U.S. 1193 (1985). The testimony regarding the various transactions in Battle Creek, Detroit and Flint are so closely intertwined that we cannot find the District Court's admission of the evidence seized in Battle Creek against the defendant to have been plain error.
 
 VII.
 
 15
 Freeman next asserts that the 100:1 ratio between the specified penalties for crack cocaine (as a cocaine base) and for pure cocaine is an arbitrary and capricious distinction, violating due process. He argues that the Sentencing Guidelines and the statutory enactment for this offense, 21 U.S.C. 841(b)(1)(A), created an irrational dichotomy, with only one reasonable conclusion to be drawn: that this dichotomy is designed to single out one group of offenders for excessively harsh penalties. We have recently decided this issue against Freeman's position. United States v. Pickett, No. 90-3594 (6th Cir. August 1, 1990).
 
 VIII.
 
 16
 The defendant's final challenges are to the sentencing procedures applied to his case. First, Freeman argues that the District Court erred in calculating a two-point increase for possession of firearms during commission of the conspiracy, under Sentencing Guideline 2D1.1(b)(1). Although there is no evidence that the defendant himself owned or possessed firearms, testimony showed that the Hit Hard Crew kept guns and--under defendant's directive--accepted them for drugs in lieu of cash. Moreover, Sentencing Guideline 1B1.3 and its commentary state that all adjustments shall be determined by "all acts and omissions ... for which the defendant would be otherwise accountable," including conduct counseled, ordered or willfully caused by the defendant.
 
 
 17
 Secondly, the defendant contests the presentence report's consideration of the beatings administered by conspirators. Testimony clearly indicated the defendant's involvement or knowledge covering such beatings, as was addressed earlier. Moreover, there is no indication that any increase in the defendant's sentence by the District Judge was directly or indirectly attributable to this testimony.
 
 
 18
 The defendant argues that the District Court improperly based its determination of the amount of drugs involved in the conspiracy on a witness' guess and upon improperly admitted evidence, to wit, the 315 rocks seized in Battle Creek. We have earlier rejected the defendant's challenge on admission of the 315 rocks; for the same reason, we reject this contention as well. As to the former issue, Freeman cites United States v. Robison, 904 F.2d 365, 371-72 (6th Cir.1990), for the proposition that it is improper to base the determination of the amount of drugs on a witness' guess. In Robison, the witness' testimony was not sufficiently accurate for the court reliably to include his testimony of the quantity of drugs as a factor in determining the defendant's base level offense, although the drugs may have been "part of the same course of conduct or common scheme." Id. at 371. Here, however, the variety of other testimony available provided some minimum indicia of reliability beyond the witness' mere allegations. Taken together, the other evidence regarding daily sales estimates, cocaine recovered by the defendant, and the 315 rocks seized from the Battle Creek conspirators would reasonably allow the District Court to determine, by a preponderance of the evidence, that at least 500 grams of cocaine had been distributed by the conspiracy. There is sufficient evidence to support the District Court's findings here. Cf. United States v. Walton, 908 F.2d 1289, 1301-03 (6th Cir.1990).
 
 
 19
 The defendant's last challenge is to the procedures by which his prior criminal record was used to enhance his sentence. Under 28 U.S.C. 851, Freeman contends that the government was required to file a pretrial information stating what prior convictions it would rely upon to enhance punishment or sentencing, citing United States v. Williams, 899 F.2d 1526 (6th Cir.1990). In Williams, however, the defendant's sentencing was under statutory provisions, not the Sentencing Guidelines; the government's failure to notify the defendant of its intent to seek statutory enhancement pursuant to 21 U.S.C. 841(b)(1)(B) required it to have filed the pretrial information. Here, Freeman was sentenced purely under the Guidelines. As such, section 851's requirement, by its own terms, simply does not apply. See United States v. Sanchez, 917 F.2d 607, 616 (1st Cir.1990); United States v. Marshall, 910 F.2d 1241, 1244-45 (5th Cir.1990); and United States v. Wallace, 895 F.2d 987, 489-90 (8th Cir.1990). This argument is, therefore, rejected.
 
 IX.
 
 20
 Accordingly, the judgment of the District Court is AFFIRMED.
 
 
 
 *
 The Honorable Eugene E. Siler, Jr., United States District Judge for the Eastern District of Kentucky, sitting by designation