**UNITED STATES of America, Plaintiff-Appellee/Cross-Appellant,**

v.

**John Manuel WILLIAMS and Eric Demitries Patt, Defendants-Appellants/Cross-Appellees.**

**Nos. 90–4135, 90–4137, 90–4152 and 90–4156.**

United States Court of Appeals, Tenth Circuit.

May 5, 1992.

Harry Caston of McKay, Burton & Thurman, Salt Lake City, Utah, for defendant-appellant/cross-appellee John Manuel Williams.

Donald C. Hughes, Jr., Ogden, Utah, for defendant-appellant/cross-appellee Eric Demitries Patt.

Richard D. Parry, Asst. U.S. Atty., Salt Lake City, Utah (Dee Benson, U.S. Atty., with him on the briefs), for plaintiff-appellee/cross-appellant.

Before LOGAN and BRORBY, Circuit Judges, and OWEN, District Judge.*

LOGAN, Circuit Judge.

Defendants John M. Williams and Eric D. Patt appeal their conviction following a jury trial for one count of distributing "crack" cocaine and two counts of possession with the intent to distribute "crack"

---

* The Honorable Richard Owen, Senior United States District Judge for the Southern District of New York, sitting by designation.

cocaine, in violation of 21 U.S.C. § 841. *United States v. Williams*, 746 F.Supp. 1076, 1077 (D.Utah 1990).

Defendants both assert that the district court erred in preventing inquiry into the juvenile records of two government witnesses. Williams also contends that the district court abused its discretion when it denied his motion for transportation. The United States cross-appeals, pursuant to 18 U.S.C. § 3742(b), the sentence imposed on both defendants. The government asserts that the trial court's refusal to sentence defendants in accordance with applicable federal law and the federal sentencing guidelines constituted the imposition of a sentence in violation of law.

Defendants were arrested following an investigation by the Weber/Morgan Narcotics Strike Force (Strike Force), a multiagency force created to investigate and prosecute drug crimes. *Williams*, 746 F.Supp. at 1078. The Strike Force agreement contained no policy or procedure concerning referral to state or federal prosecution. The Strike Force referred defendants' case to the United States Attorney in Salt Lake City, Utah, and a federal grand jury returned an indictment against defendants for distribution of crack cocaine, and possession with intent to distribute an amount in excess of fifty grams of crack cocaine.

At the jury trial, the government presented testimony of police officers who described the arrest. Acting on information that two drug dealers had come into Ogden, Utah and were dealing drugs from a house at 2936 Adams Street, the Strike Force used an informant to make a controlled buy of crack cocaine. The informant entered the house and exchanged a one hundred dollar bill for six rocks of cocaine from defendant Patt. The police obtained a search warrant and as police approached the house, defendants jumped up from a couch and ran to a stairwell in the back of the house and to a door that was nailed shut. Police officers broke through the front door and pursued defendants to the stairwell. A search revealed $700 in cash in Williams' back pocket, in-

cluding the one hundred dollar bill the informant used in the controlled buy. Officers searched the premises and found approximately eighty-four grams of crack cocaine on a bookshelf, and eight grams of crack cocaine on the floor at the bottom of the stairwell where defendants were apprehended.

The government presented testimony of several witnesses who testified that defendants had used the house before their arrest. The tenants who allowed defendants to use the premises, Troy Rivera and Nicole Rios, also testified that they had agreed to let defendants stay at the house because they were moving out. The defense then presented its case, attempting to show that defendants were not residents of the house and inferring that the cocaine belonged to Rivera and Rios. The jury, however, found defendants guilty.

Before sentencing, in response to the presentence report, defendants moved for a departure from the recommended sentences. Defendants asserted that their constitutional rights of due process were violated when they were referred for federal rather than state prosecution, thereby subjecting them to the higher federal sentencing guidelines and minimum mandatory sentences. The district court, relying on *Morrissey v. Brewer*, 408 U.S. 471, 481, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484 (1972), found a due process violation. To remedy this perceived due process problem, the district court imposed sentences "irrespective of the relevant federal minimum mandatory statutes, 21 U.S.C. section 841(b) and also irrespective of the federal sentencing guidelines." *Williams*, 746 F.Supp. at 1083.

I

A

Defendants contend that the district court erred when it prevented inquiry into government witnesses Tony Rivera's and Nichole Rios' juvenile records. Defendants appear to assert violation of their right to confront witnesses and error under Fed.

R.Evid. 609(d).[1] They argue that several aspects of Rios and Rivera's testimony were crucial to the case. The critical testimony was that Rivera and Rios had moved out of the house and defendants then became residents of the house in which defendants and rock cocaine were found, and that Rivera had sold cocaine for defendants. Defendants sought to show that they were not residents of the house nor cocaine dealers, but were coincidentally at the residence of Rivera and Rios at the time of the bust. Thus, defendants argue, it was crucial that they be allowed to impeach Rivera and Rios with evidence of their criminal history.

We note that the jury was made aware of the juvenile record of Rivera during cross examination.

Q. You've got a juvenile record, don't you?

A. Yes, I do.

Q. That include a shooting in the city?

A. No.

III R. 128. Also, when defense counsel asked Rios on cross-examination if she had been convicted of a felony, "like stealing or something," the government objected, the court sustained the objection, and rather than make a proffer, the defense withdrew the question. IV R. 29–30. Moreover, although defendants argue on appeal that some of the witnesses' criminal history included adult adjudications, that evidence was not proffered to the district court. When a defense counsel specifically inquired regarding Rivera's *juvenile* record, the court instructed counsel, "Don't go into his juvenile problems." III R. 128.

Defendants rely on *Davis v. Alaska,* 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974), to support their claim that exclusion of cross-examination concerning the two witnesses' juvenile records violated defendants' Sixth Amendment right to confrontation. In *Davis* the defense attempted to cross-examine the state's key witness

about his prior juvenile adjudications and probationary status in order to show possible self-interest or bias of the witness in testifying for the prosecution. The trial court refused to allow evidence concerning the juvenile adjudications, relying on a state statute prohibiting disclosure of juvenile proceedings without consent of the court. The Supreme Court, however, held that the state's interest in keeping juvenile records confidential was outweighed by the criminal defendant's right to confrontation through cross-examination of a prosecution witness.

*Davis* is distinguishable from the instant case in important respects. *Davis* did not hold "that the Constitution confers a right in every case to impeach the general credibility of a witness through cross-examination about his past delinquency adjudications or criminal convictions." *Id.* at 321, 94 S.Ct. at 1113 (Stewart, J., concurring). In *Davis,* the witness was on probation and thus susceptible to government influence. *See United States v. Decker,* 543 F.2d 1102, 1105 (5th Cir.1976), *cert. denied,* 431 U.S. 906, 97 S.Ct. 1700, 52 L.Ed.2d 390 (1977). In the instant case, there is no evidence in the record that either witness was on probation, and defendants do not argue that as a ground for admitting the evidence. Defendants do imply that the witnesses may have been motivated to lie because they were potential suspects in the case; but the jury was made aware of the witnesses' potential motivation to lie and their potential for bias, because the defense explored those possibilities on cross-examination. Defense counsel on cross-examination also elicited testimony from Rivera concerning a pending aggravated battery charge for which he was incarcerated at the time of trial; thus the jury was aware that Rivera might have been motivated to lie for the government because of pending charges. *Davis* also differs from the instant case because *Davis* involved the key

---

1. Fed.R.Evid. 609(d) provides as follows:

    (d) Juvenile adjudications. Evidence of juvenile adjudications is generally not admissible under this rule. The court may, however, in a criminal case allow evidence of a juvenile adjudication of a witness other than the ac-

cused if conviction of the offense would be admissible to attack the credibility of an adult and the court is satisfied that admission in evidence is necessary for a fair determination of the issue of guilt or innocence.

witness for the prosecution. *See Davis,* 415 U.S. at 310, 94 S.Ct. at 1107. In the instant case, many other material witnesses testified for the prosecution, including arresting officers who testified to the arrest and search discussed above.

Finally and perhaps most importantly, in *Davis* the defense did not have effective means, other than juvenile adjudications and probationary status, of attacking the witnesses' credibility or probing for bias. *See id.* at 318, 94 S.Ct. at 1111; *see also United States v. Ciro,* 753 F.2d 248, 249 (2d Cir.), *cert. denied,* 471 U.S. 1018, 105 S.Ct. 2025, 85 L.Ed.2d 306 (1985). In contrast, in the instant case substantial evidence was introduced to attack the witnesses' credibility. This information included that Rivera was a drug dealer who had sold crack for defendants; that he lied to police concerning his whereabouts; that he was incarcerated at the time of trial on a charge of aggravated burglary; and that he had a juvenile record. The jury heard testimony that Nicole Rios was an unwed, sixteen year-old mother, that she was cheating the welfare system by receiving payments while she lived with Rivera, and that she had lied to police. Defendants' ability to effectively cross-examine witnesses Rivera and Rios was not substantially impaired by the exclusion of evidence of prior crimes.

**B**

■ Defendants also assert that the district court erred in excluding evidence of the witnesses' alleged juvenile adjudications under Fed.R.Evid. 609(d). The standard of review for the exclusion of evidence of the juvenile record of a witness under Rule 609(d) is whether the district court abused its discretion. *Ciro,* 753 F.2d at 249; *see also United States v. Alexander,* 849 F.2d 1293, 1301 (10th Cir.1988) (standard of review for evidentiary ruling is abuse of discretion). We note that Rule 609(d) creates a presumption that evidence of juvenile adjudications is generally *not* admissible. *See* Fed.R.Evid. 609(d). In view of the opportunity for cross-examination discussed above, it was not an abuse of discretion for the judge to exclude evidence

of the alleged juvenile adjudications. Under the circumstances, we cannot say that such evidence was "necessary for a fair determination of the issue of guilt or innocence." Fed.R.Evid. 609(d); *see also United States v. Lind,* 542 F.2d 598, 599 (2d Cir.1976) (judge's refusal to allow impeachment of kidnap victim with juvenile record not abuse of discretion), *cert. denied,* 430 U.S. 947, 97 S.Ct. 1585, 51 L.Ed.2d 796 (1977).

**II**

■ Defendant Williams also alleges an abuse of discretion by the district court in denying his motion for transportation. Before trial, defendant Williams made a motion for transportation from Salt Lake County Jail to Ogden, Utah with a United States Marshal to locate the residence of a corroborating witness who allegedly lived in Ogden. Williams asserted that it was necessary and essential to his defense to locate the witness. The court denied the motion, noting that the court had already signed an order to provide Williams the services of an investigator. *See United States v. Goodwin,* 770 F.2d 631, 635 (7th Cir.1985) (whether to authorize investigative services is within the discretion of the court), *cert. denied,* 474 U.S. 1084, 106 S.Ct. 858, 88 L.Ed.2d 897 (1986). We find no abuse of discretion in the court's denial of transportation.

**III**

■ We next address the government's contention that the district court erred in finding a due process violation which the court then remedied by refusing to follow federal minimum mandatory sentences or the sentencing guidelines. The district court reasoned that because the Strike Force had no written policy or guidelines for referral of cases to the federal prosecutor, the referral could have been for an improper purpose. *See Williams,* 746 F.Supp. at 1082–83. "[B]ecause of the inability to measure the referral decision against an objective and constitutionally permissible standard ... [the district] court [found] that the defendants' procedural due

process rights ha[d] been violated." *Id.* at 1083. To remedy the due process violation the district court refused to follow federal statutory or sentencing guidelines, but instead considered "[t]he state penalties and sentencing matrix for cocaine possession and distribution, ... as well as other pertinent information about the defendants." *Id.*

The court sentenced each of the defendants to a sentence of five years to run concurrently on counts I and II, and to five years probation on count III. The minimum mandatory sentence under federal statutes was ten years, *see* 21 U.S.C. § 841(b)(1)(A), and the guidelines would have required more. *See Williams,* 746 F.Supp. at 1078 ("The initial pre-sentence reports filed by the U.S. Probation Office established a sentencing guideline range of 188 to 235 months for defendant Williams and a range of 151 to 188 months for defendant Patt.").

We recently addressed the same due process argument in *United States v. Andersen,* 940 F.2d 593 (10th Cir.1991); *see also United States v. Morehead,* 959 F.2d 1489 (10th Cir.1992). In *Andersen* we rejected the reasoning of the district court in the instant case. *See Andersen,* 940 F.2d at 595, 597; *see also United States v. Allen,* 954 F.2d 1160, 1165–66 (6th Cir.1992) (rejecting district court's *Williams* decision and agreeing with *Andersen* ); *United States v. Carter,* 953 F.2d 1449, 1461–62 (5th Cir.1992) (rejecting district court's *Williams* decision and agreeing with *Andersen* ). "In the absence of proof that the choice of forum was improperly motivated or based on an impermissible classification as a matter of constitutional law," prosecution in a federal rather than a state court does not violate due process despite the absence of guidelines for such referral. *Morehead,* 959 F.2d at 1499 (citing *Andersen,* 940 F.2d at 596–97).

There is no evidence in the record that the referral to federal prosecutors was based on race or other impermissible reasons. Therefore, we hold that the district court erred when it found that defendants' due process rights were violated when they were referred to the federal prosecutor and tried and convicted in federal rather than state court. Because prosecution of defendants in the federal court was not a due process violation, the district court improperly departed from the sentencing guidelines and federal statutes, and we must remand for sentencing.

We note that the district judge suggested that if he were sentencing under the guidelines, he would not apply the two point increase for distribution within a thousand feet of a school. *See* VIII R. 11–12; *see also* U.S.S.G. § 2D1.2; 21 U.S.C. § 860 (formerly § 845a). The government argues that § 2D1.2 is not an optional provision. As defendants point out, however, there is no actual controversy because the district court has not yet sentenced defendants under the guidelines. Therefore, any arguments on this point should be presented to the district judge on remand.

Conviction AFFIRMED. REMANDED for resentencing. Upon remand, the district court is instructed simultaneously to vacate the prior sentence and resentence in a manner consistent with this decision.