UNITED STATES of America,
Plaintiff–Appellee,

v.

Michael F. GOODAPPLE,
Defendant–Appellant.

No. 90–3819.

United States Court of Appeals,
Seventh Circuit.

Argued Dec. 3, 1991.

Decided March 16, 1992.

---

Byron G. Cudmore, Asst. U.S. Atty., Office of U.S. Atty., Springfield, Ill., argued, for plaintiff-appellee.

Charles M. Shaw, James J. Knappenberger (argued), Shaw, Howlett & Knappen-

berger, Clayton, Mo., for defendant-appellant.

Before WOOD, Jr.,* and FLAUM, Circuit Judges, and ESCHBACH, Senior Circuit Judge.

HARLINGTON WOOD, Jr., Circuit Judge.

Michael F. Goodapple appeals his convictions on one count of conspiracy to transfer machine guns in violation of 18 U.S.C. § 371, four counts of transfer of an unregistered machine gun in violation of 26 U.S.C. § 5861(e), four counts of distribution of controlled substances in violation of 21 U.S.C. § 841(a)(1) and one count of possession with the intent to distribute a controlled substance also in violation of 21 U.S.C. § 841(a)(1) as set forth in a superseding indictment. Since the facts leading up to Goodapple's indictment are not at issue in this appeal, we dispense with our usual summary of the background facts and directly address each of Goodapple's claims of error. For the following reasons, we affirm.

■ First, Goodapple asserts that his fifth amendment right to remain silent at trial and his fifth amendment right to be free of comment on his right to remain silent were violated when the trial court read to potential jurors a list of those who would possibly testify at trial, including Goodapple's name. The court had already introduced Goodapple as the defendant and advised the jury of the criminal charges. Goodapple says the court's comment effectively compelled him to testify and called the jury's attention to whether or not he would testify or remain silent. The government answers that Goodapple "invited" any error because the defendant's own witness list contained his name. The government's "invited error" argument is not persuasive since the trial court's local rules may be interpreted to require counsel to file with the court a list of potential witnesses without any exception for a defendant. That may be because the judges who approved the rules did not anticipate

what happened in this case. *See* Rule 17, United States District Court Central District of Illinois, Standing Order for Final Pre–Trial on Prisoner Cases (April 1, 1987). In any event the defense cannot clearly be said to have invited error when the local rules may be interpreted to require submission of a list of potential witnesses that might include a defendant.

■ Goodapple correctly states that *Griffin v. California*, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965), prohibits both the court and the prosecution from making a comment on a defendant's failure to testify and inviting the jury to infer guilt from the failure. A direct comment on the defendant's failure to testify is clearly a fifth amendment violation. *See Griffin*, 380 U.S. at 614, 85 S.Ct. at 1232. But, if the comment is indirect, there is a fifth amendment violation only if the comment causes the jury to necessarily and naturally draw the inference of the defendant's guilt from his failure to testify. *United States ex rel. Adkins v. Greer*, 791 F.2d 590, 598 (7th Cir.), *cert. denied*, 479 U.S. 989, 107 S.Ct. 584, 93 L.Ed.2d 586 (1986). Judge Mills's naming Goodapple as a possible witness at trial is neither a direct nor an indirect comment on Goodapple's right to remain silent. Although it is subject to misinterpretation the reading of the list does not appear intended to be a remark on the accused's failure to testify or the defendant's right to remain silent. *See United States v. Flannigan*, 884 F.2d 945, 954 (7th Cir.1989), *cert. denied*, — U.S. —, 110 S.Ct. 3277, 111 L.Ed.2d 786 (1990). Even if we were to characterize the trial court's statement as an indirect comment on Goodapple's fifth amendment right to remain silent, Goodapple's claim would not succeed since the comment must be examined in context. The court read the list of names, including Goodapple's, to potential jurors in order to determine whether any one of them was acquainted with any potential witness, *i.e.*, to ensure that an impartial jury was chosen. The trial court's focus was directed toward a juror's possible relationship with witnesses, not whether the

---

* Judge Wood, Jr. assumed senior status on January 16, 1992, after oral argument in this case.

defendant would or would not testify. Goodapple suggests that the trial court should have simply asked potential jurors if they were acquainted with him instead of naming him as a potential witness. Goodapple's suggestion is a prudent one and the customary procedure, but Goodapple did not make this suggestion in the trial court. In criminal cases the trial court for good reason does not ordinarily mention the defendant as a possible witness. Nor is it unreasonable to expect the government, provided it had the list of witnesses in advance, to question the inclusion of the defendant's name on that list before it was read to the jury. That might have avoided the issue we now have here. Any relationship a potential juror may have with the defendant may be separately and adequately explored as part of the general voir dire without any suggestion that the defendant may testify. It is not only unnecessary to include the defendant on a list of possible witnesses for voir dire purposes, it is flirting with error. Nevertheless, in the context of this case the fact that Goodapple's name was read does not rise to a constitutional violation requiring reversal of Goodapple's convictions.

■ Next, Goodapple says that the government's informant in this case, Chris Davis, should not have been allowed to testify during the government's case-in-chief concerning drug transactions between himself and Goodapple that occurred prior to the date of the incidents in this case. Specifically, Goodapple argues that Davis's testimony is barred by Fed.R.Evid. 404(b) and Fed.R.Evid. 403. The government counters that Davis's testimony is not barred because it is relevant to predisposition, which the government was required to prove beyond a reasonable doubt since Goodapple raised the affirmative defense of entrapment in his opening statement. Furthermore, the government maintains that Count 10 of the indictment charging possession with the intent to distribute Valium is a specific intent offense, and the government is therefore entitled to introduce the prior transactions under Fed.R.Evid. 404(b) to prove intent. Finally, the government argues that Goodapple's prior dealings with Davis were inextricably intertwined with the charged crimes.[1]

■ Fed.R.Evid. 404(b) reads: "Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." [2] Evidence of other bad acts is also admissible to prove predisposition in an entrapment case. *United States v. Swiatek,* 819 F.2d 721, 728 (7th Cir.), *cert. denied,* 484 U.S. 903, 108 S.Ct. 245, 98 L.Ed.2d 203 (1987) (citations omitted). In order to be admitted under Rules 404(b) and 403, evidence of prior bad acts must satisfy a four-part test: (1) the proffered evidence must be relevant to a matter in issue other than the defendant's propensity to commit the charged crime; (2) the prior bad act must be similar in nature and close in time to the crime charged; (3) the prosecution must establish that the defendant in fact committed the prior bad act; (4) the probative value of the evidence must not be

1. The government also argues that Goodapple waived any objection to Davis's testimony by failing to make a timely objection. Goodapple's counsel objected after Davis explained the earliest transaction between himself and Goodapple. The objection was put on the record at a later time according to the practice of the trial court. The transcript indicates that when the objection was put on the record, Judge Mills found the objection timely made. We see no reason to disturb the trial court's decision.

2. Although not applicable to this case, Fed. R.Evid. 404(b) as recently amended Dec. 1, 1991, states:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, provided that upon request of the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial.

outweighed by its prejudicial effect. *United States v. Monzon*, 869 F.2d 338, 344 (7th Cir.), *cert. denied*, 490 U.S. 1075, 109 S.Ct. 2087, 104 L.Ed.2d 650 (1989). The fourth prong of the test covers Rule 403, which provides for exclusion of relevant evidence on grounds of prejudice, confusion or waste of time.

Goodapple maintains that Davis's testimony was admitted over his objection for the precise purpose prohibited by Rule 404(b). Goodapple first argues that Davis testified to incidents that occurred several years before the incidents charged in this case. Next, Goodapple says that the government should not have been allowed to introduce Davis's testimony in its case-in-chief to prove Goodapple's predisposition simply because Goodapple referred to the issue of entrapment in his opening statement. Last, Goodapple urges us to apply Rule 403 if we should find Davis's testimony admissible under Rule 404(b), as the testimony was clearly unduly prejudicial when weighed against its murky and uncertain probative value.

■ In previous cases we have allowed the prosecution to introduce in its case-in-chief evidence of a defendant's predisposition. *See United States v. Parkin*, 917 F.2d 313, 316 (7th Cir.1990) (stating that government could introduce evidence of other drug transactions to rebut the entrapment defense that was raised in Parkin's opening statement); *see also, United States v. Rivera–Espinoza*, 905 F.2d 156, 159 (7th Cir.1990) (rejecting defendant's objection to evidence of his predisposition being introduced during the government's case-in-chief in absence of plain error). In this case, the record shows that Goodapple's counsel made more than a passing reference to the affirmative defense of entrapment in his opening statement. His counsel even stated his belief that the jury would receive an instruction on entrapment at the end of the case. At the end of the trial the jury received an instruction on entrapment for each of the ten counts in the indictment. Undoubtedly, the circumstances here are not analogous to the situation presented in a case such as *United*

*States v. McGuire*, 808 F.2d 694 (8th Cir. 1987). In *McGuire* the court stated that it was error for the district court to allow the government to introduce rebuttal evidence in its case-in-chief in anticipation of an entrapment defense that was proposed in the defense counsel's opening statement but that never actually materialized. *McGuire*, 808 F.2d at 696. When the entrapment defense is clearly raised in the defense's opening statement and the entrapment defense obviously materializes through a defendant's presentation of its own witnesses or through cross-examination of the government's witnesses, it is not error for the government to present evidence of predisposition in its case-in-chief, provided the evidence meets the standard of Rule 403. This is especially true in a case such as this one where the government was entitled to introduce Davis's testimony in order to prove intent for Count 10 of the indictment charging unlawful possession with the intent to distribute valium. *See Monzon*, 869 F.2d at 344 (evidence meets the first test of admissibility under Rules 404(b) and 403 if relevant to specific intent).

To knowingly and intentionally possess with the intent to distribute a controlled substance is a specific intent offense. *See* 21 U.S.C. § 841(a)(1). Davis's testimony that Goodapple had previously obtained drugs from the hospital where he worked and distributed them to Davis was directly relevant to and probative of Goodapple's intent regarding Count 10. There is some question as to whether the prior transactions were close enough in time to be relevant to Goodapple's intent regarding the distribution of Valium. Davis testified that after he met Goodapple in the spring or summer of 1983, "it was a period of time" before Goodapple brought him three bottles of pills that he had obtained from the hospital. This transaction was several years before the incidents in this case. However, Davis also testified to similar transactions occurring throughout 1986, 1987, and until 1988 when Davis finally contacted law enforcement. The early prior transactions may not rise to the level of being inextricably intertwined with the charged offense as the government main-

tains. If they were inextricably intertwined, the evidence would not come under the purview of Rule 404(b). *See United States v. Hattaway*, 740 F.2d 1419, 1425 (7th Cir.), *cert. denied, Curran v. United States*, 469 U.S. 1028, 105 S.Ct. 448, 83 L.Ed.2d 373 (1984), *and cert. denied, Hattaway v. United States*, 469 U.S. 1089, 105 S.Ct. 599, 83 L.Ed.2d 708 (1984) (evidence is "intricately intertwined" when exclusion of it leaves a conceptual and chronological void). However, the transactions are similar enough and close enough in time to the charged offenses to satisfy the second prong of admissibility under Rules 404(b) and 403.

Given that Davis's testimony could be properly admitted to show his predisposition to commit the charged offenses and his specific intent with respect to Count 10, there only remains to decide whether the testimony meets the fourth prong of admissibility under Rules 404(b) and 403—whether the evidence was unduly prejudicial in light of its probative value. Of course the defendant will maintain that all evidence submitted by the prosecution during trial is prejudicial to him; therefore, we focus on whether the trial judge abused his discretion in finding that the probative value of Davis's testimony was not substantially outweighed by the danger of unfair prejudice. *See United States v. Lewis*, 910 F.2d 1367, 1372 (7th Cir.1990) (evidentiary rulings of a trial judge will be overturned only upon clear abuse of discretion). There was no abuse of discretion in admitting Davis's testimony. The testimony was probative of Goodapple's predisposition, introduced to negate his asserted defense of entrapment, and it was probative of his specific intent to distribute the Valium he illegally possessed. Davis's testimony did not have an "undue tendency to suggest decision on an improper basis." *See* Fed.R.Evid. 403 advisory committee's note.

Goodapple also complains that the trial court erred in restricting his cross-examination of Davis. Our treatment of this contention of error will be short. The standard of review of the trial court's decision to limit cross-examination is abuse of discretion. *United States v. Abayomi*, 820 F.2d 902, 905 (7th Cir.), *cert. denied*, 484 U.S. 866, 108 S.Ct. 189, 98 L.Ed.2d 142 (1987). Our examination of the record does not reveal abuse of discretion. Goodapple's counsel attempted to inquire as to whether Davis had ever asked anyone to kill people for money. He also attempted to ask him whether he amputated his own arm for money. After these questions were posed a side bar was held in which the trial court pointed out that cross-examination on the basis of credibility was important and certainly allowed, but that cross-examination was not to be carried out by asking "totally outrageous questions." After the trial court's admonition, Goodapple's counsel proceeded to inquire into Davis's prior convictions, illegal drug use, and illegal activities to obtain money. There is ample evidence in the record demonstrating that Goodapple's counsel was able to probe Davis's credibility, and it was not an abuse of discretion for Judge Mills to limit the cross-examination.

Next, Goodapple raises a host of contentions regarding the government's use of information from Goodapple's "proffers" to the government. On October 27, 1989, Goodapple and his attorney signed a "proffer" letter submitted to them by the United States Attorney's office apparently as part of plea negotiations which did not materialize. The letter requests a proffer of testimony from Goodapple. In addition, the letter embodies a warning that if Goodapple should testify at trial inconsistently with the substance of his proffer "nothing shall prevent the government from using the substance of the proffer ... at trial for impeachment or in rebuttal testimony." Subsequent to signing the proffer letter, Goodapple twice met with the Assistant United States Attorney and gave oral statements. Agent York of the United States Treasury Department, Bureau of Alcohol, Tobacco, and Firearms, took notes. Written reports detailing the substance of Goodapple's proffers were prepared, and these reports were given to Goodapple during pre-trial discovery. At trial Goodapple was asked on cross-examination about a "meet-

ing" (the proffer sessions) he had in the United States Attorney's office. When his testimony was inconsistent with the substance of his proffer, the government impeached Goodapple with his proffer statements, as specifically permitted by the proffer letter. Agent York then took the stand as a government rebuttal witness for the sole purpose of completing Goodapple's impeachment based on the proffer. Goodapple first maintains that the government should not have been able to use statements from the proffer meetings for impeachment at trial. As we have noted, Goodapple and his attorney signed an agreement which specifically allowed the government to use statements Goodapple made during the proffers for impeachment should he testify inconsistently at trial. Thus, the easy answer to his objections to its use is that the objection was waived when he signed. We nevertheless address each of his arguments.

■■■■ Contrary to Goodapple's belief, use of proffer information at trial does not implicate the attorney-client privilege. The attorney-client privilege does not attach unless the communication between the client and the attorney is confidential. *United States v. Lawless*, 709 F.2d 485, 487 (7th Cir.1983). Moreover, we have said that the "scope of the privilege should be 'strictly confined within the narrowest possible limits.'" *Id.* In this case, government agents were present when Goodapple made proffer statements which later conflicted with his trial testimony. Since anything he said during the meeting was revealed to his attorney and third persons simultaneously, he cannot claim the privilege.

■■■■ Goodapple asserts that use of the substance of the proffer for impeachment forces him to choose between entering into plea negotiations, going to trial and his right to counsel. He also says that use of proffer material "raises the specter before the jury of why the Defendant did not plead guilty." Both of these contentions are without merit. As for the first, Goodapple is not forced to choose anything. He is free to consult with his counsel confidentially and reserve the attorney-client

privilege. He can volunteer information in a proffer in order to negotiate a plea without fear of impeachment—as long as he is truthful. And, he can choose to testify or not to testify at trial without regard to the proffer. As we see it, Goodapple is only "forced" to choose if he wants to be untruthful in his proffer or his testimony. We do not believe such a desire deserves protection. Goodapple's second contention of error fails as well. The government in no way suggested to the jury in its cross-examination of Goodapple or in its direct examination of Agent York that the "meeting" was related to plea negotiations. Thus, the "specter" that Goodapple claims was raised before the jury is simply a harmless chimera.

■■■■ Also with regard to the government's use of the proffer information, Goodapple complains that he was not allowed to adequately cross-examine on the subjects about which Agent York testified. As we stated, we will not reverse the trial judge's limitation of cross-examination unless there is clear abuse of discretion. There is none here. Goodapple's counsel was allowed to thoroughly cross-examine Agent York.

■■■■ Goodapple's next claim of error concerns the prosecution's remark in the government's closing argument directed to Goodapple's veracity. The prosecutor argued to the jury, "Don't be fooled about what the Defendant says, he would say anything to save his own skin." Goodapple maintains the prosecutor's statement is an impermissible personal opinion that deprived him of a fair trial, requiring reversal of his convictions.

■■■■ The analysis of prosecutorial misconduct is bifurcated. First, we look to see if the remark was improper. Second, if the remark is found to be improper, we determine whether, in light of the entire record, the defendant was deprived of a fair trial. *Swiatek*, 819 F.2d at 730. As for propriety of the remark, we note that the government is allowed to comment on the credibility of a witness, including the defendant, as long as the comment reflects

reasonable inferences from the evidence adduced at trial rather than personal opinion. *United States v. Tucker*, 820 F.2d 234, 237 (7th Cir.1987). In *United States v. Chaimson*, 760 F.2d 798, 811 (7th Cir. 1985), we said that the prosecution may even characterize the defendant as a liar unless the terms referring to fabrication or lying are used to excessiveness. The *Chaimson* court pointed to at least three references to the defendant Chaimson's veracity interspersed throughout the 48–page transcript of the government's closing argument. In contrast, Goodapple can point to only one instance. This single reference, in light of the entire closing argument, does not cross the line of excessiveness nor impair the jury's calm and detached search for the truth. *See Chaimson*, 760 F.2d at 811. Moreover, the prosecutor followed his remark by a comparison of Goodapple's testimony to testimony of other witnesses and other evidence admitted at trial. Thus, the comment reflected evidence presented at trial and not the prosecutor's personal opinion of Goodapple. Since we decide that the prosecutor's remark was not improper, we need not consider whether Goodapple was deprived of a fair trial.

 Finally, Goodapple argues that his right to due process was violated because this case was tried in federal court rather than in state court. Because the case was tried in federal court, Goodapple was subjected to a higher range of punishment than he would have been in state court. He also lost protection of state wiretapping statutes.[3] Goodapple points to *United States v. Williams*, 746 F.Supp. 1076 (D.Utah 1990), to support his argument that he was the victim of unbridled discretion when his case was transferred to federal court. In *Williams*, the district court held that the defendants' rights to procedural due process were violated when an intergovernmental strike force referred the defendants for federal prosecution in

absence of any policy or accountability. The *Williams* court stated that, without a policy, the referral decision could too easily be "based upon inappropriate and capricious factors violative of these defendants' Constitutional rights to due process of law." 746 F.Supp. at 1083. The *Williams* decision has been flatly rejected by the Tenth Circuit. *See United States v. Andersen*, 940 F.2d 593, 597 (10th Cir.1991). The *Andersen* court's language is persuasive: "[the intergovernmental investigators] make the initial decision whether to refer a case to federal or state prosecutors. They also may confer with prosecutors as charging decisions are made. The ultimate decision whether to charge a defendant, and what charges to file, however, rests solely with state and federal prosecutors.... Absent convincing evidence to the contrary, we will not assume that prosecutors are acting as 'rubber stamps' for charging decisions made by the [intergovernmental investigators]."

The record clearly indicates that Goodapple was indicted following an ongoing joint investigation conducted by state and federal authorities. Originally, there was an agreement between state and federal prosecutors that the narcotics portion of the case would be tried in state court, while the machine gun related offenses would be tried in federal court. At a later time, however, the prosecutors decided that all offenses charged against Goodapple would be tried in federal court. The federal prosecutors in this case were entitled to exercise their broad discretion to try this case in federal court where the existence of federal jurisdiction over the charged offenses is not in doubt. That Goodapple was exposed to a higher sentencing range for his offenses in federal court than in state court is not evidence of abuse in the government's decision to prosecute in federal court. We have traditionally refused to review the exercise of prosecutorial discretion. *See United States v. Morales*, 902

---

**3.** This argument is groundless. Federal as well as state agents investigated Goodapple, so 18 U.S.C. § 2511(2)(c), the federal wiretapping statute, clearly applies. As long as the recorded conversations are admissible under federal law,

they are admissible in federal court, notwithstanding that the recordings might not have been admissible in state court. *United States v. D'Antoni*, 874 F.2d 1214, 1218–19 (7th Cir.1989).

F.2d 604, 607 (7th Cir.1990) (prosecutor decided to prosecute defendant in federal court where maximum sentence for offense was fifteen years as compared to five years under Illinois law) (citing, *United States v. Schwartz*, 787 F.2d 257, 266 (7th Cir.1986); *United States v. Podolsky*, 798 F.2d 177, 179 (7th Cir.1986); *United States v. Miller*, 891 F.2d 1265, 1271–72 (7th Cir.1989) (concurring opinion)). Certainly the decision to file suit in federal or state court is not determined by which sovereign gives the defendant the lightest punishment.

We find no reversible error.

AFFIRMED.