UNITED STATES of America,
Plaintiff–Appellee,

v.

Armando ACOSTA–BALLARDO,
Defendant–Appellant.

No. 92–2205.

United States Court of Appeals,
Tenth Circuit.

Nov. 9, 1993.

Robert Sena, Sena and Couleur, P.C., Santa Fe, NM, for defendant–appellant.

Don J. Svet, U.S. Atty. and James D. Tierney, Supervisory Asst. U.S. Atty., Albuquerque, NM, for plaintiff–appellee.

Before SEYMOUR, ANDERSON, and EBEL, Circuit Judges.

SEYMOUR, Circuit Judge.

Defendant-appellant Armando Acosta–Ballardo (Acosta) appeals from convictions for conspiracy to possess cocaine with intent to distribute in violation of 21 U.S.C. § 846 (1988), and possession of cocaine with intent to distribute in violation of 21 U.S.C. § 841(a)(1) (1988). He was sentenced concurrently on the conspiracy and possession counts to sixty months. Mr. Acosta contends that his convictions must be reversed because the trial court erred in admitting statements made during plea discussions. He also argues that the evidence is insufficient to sustain his conviction for possession. We affirm Mr. Acosta's conviction for conspiracy, and we reverse his conviction for possession of cocaine with intent to distribute.

## I.

Detective Oscar Medrano, posing as a cocaine dealer, was introduced to Sanio Silva–Manriquez (Silva). Mr. Silva stated that he represented a group of individuals who had cocaine for sale. At a November 5th meeting in Mr. Silva's home, Detective Medrano was introduced to Mr. Acosta, Jose Manuel Carranza–Sanchez (Carranza), and Humberto Montes–Vallalba (Montes). Mr. Acosta set the price for a kilogram of cocaine and arranged to deliver it the next day. On November 6, Mr. Acosta, Mr. Silva, and Mr. Carranza again met at Mr. Silva's residence. Mr. Acosta removed a briefcase from his car and went inside. When Mr. Silva came inside, Mr. Acosta told him that the cocaine was in a stereo speaker inside the house. Mr. Acosta and Mr. Silva went back outside where Mr. Acosta gave Mr. Silva a pistol and instructions to sell the cocaine for $16,500 if he did not return. Mr. Acosta then left the house. Detective Medrano arrived and Mr. Silva gave him the cocaine after removing it from the stereo speaker. The men in the house were then arrested. Detective Medrano later arrested Mr. Acosta.

At trial, Mr. Silva, Detective Medrano, Mr. Carranza, Mr. Montes, and Mr. Acosta testified. The government's case against Mr. Acosta on the possession charge was based solely on testimony given by Mr. Silva. Mr. Silva was the only witness who testified that it was Mr. Acosta who went into Mr. Silva's residence with a briefcase and left the cocaine inside the house. He is also the only witness who testified that Mr. Acosta gave him the gun and instructions about selling the cocaine.[1]

In addition to being unsupported by other testimony or physical evidence, Mr. Silva's testimony was not always certain. His testimony is unclear because he used the name "Berto" both to refer to Humberto Montes Villalba, his friend since he was "very small," rec., vol. I, at 40, and to refer to Mr. Acosta, who allegedly introduced himself to Mr. Silva as Berto Villabla, *id.* at 70. For example, Mr. Silva testified that when he told Detective Medrano that "Berto" was the source of the cocaine, he was referring to Mr. Acosta, and not his friend Humberto Montes Villalba. *Id.* at 40. However, at another point in his testimony he stated that when he said "Berto," he was talking about Mr. Montes. *Id.* at 76. He also testified that he called Mr. Montes' telephone number and left a message for "Berto" to come to his house because Mr. Acosta said he could be reached

---

1. Mr. Silva testified that Mr. Carranza went into the house with Mr. Acosta, that Mr. Carranza was present when Mr. Acosta said the cocaine was in the stereo speaker, and that Mr. Carranza was present when Mr. Acosta handed Mr. Silva the gun. Rec., vol. I, at 31–34. Mr. Carranza, however, testified that he did not see any cocaine, that he did not see any gun, and that he did not talk to Detective Medrano. Rec., vol. II, at 164–66. Mr. Carranza testified as a co-defendant, but his case was later severed from Acosta's. *Id.* at 215.

there. *Id.* at 72. Mr. Silva testified that in response to this message, "Berto, Acosta and Carranza" came to his house to meet with Detective Medrano. *Id.* at 75.

On direct examination, Mr. Acosta admitted to taking part in the negotiations for the sale of cocaine to Detective Medrano. He testified, however, that he was not present for any event on November 6th and did not physically possess any drugs during the events of November 5th and 6th. Mr. Acosta further denied knowing Mr. Carranza prior to November 5th.

On cross examination, Mr. Acosta was asked about statements he allegedly made while discussing possible cooperation with the government at a pre-trial meeting. Mr. Acosta, his attorney, and prosecuting attorney Tara Neda attended the meeting along with Detective Medrano, who interpreted Mr. Acosta's Spanish for Ms. Neda. According to the government, during this meeting Mr. Acosta told Detective Medrano in Spanish that he knew Mr. Carranza was bringing the cocaine from Arizona. He also allegedly stated that he had never seen Detective Medrano before.

In response to questions about these statements, Mr. Acosta denied stating that he knew the cocaine was being brought from Arizona by Mr. Carranza. The government recalled Detective Medrano for the purpose of impeaching Mr. Acosta's testimony. Detective Medrano testified that Mr. Acosta told him in Spanish that he knew Mr. Carranza had brought the cocaine from Arizona.

Mr. Acosta argues that the trial court erred in admitting Detective Medrano's testimony concerning Mr. Acosta's statements during the pre-trial meeting. He contends that because the statements were made in the course of plea discussions, they are inadmissible for impeachment purposes under Federal Rule of Criminal Procedure 11(e)(6) and his convictions must be reversed. Mr. Acosta also asserts that the evidence is insufficient to convict him of possession of cocaine with intent to distribute.

## II.

We first address Mr. Acosta's argument concerning the admissibility of his state-

ments made during the plea discussions. On direct examination, Mr. Acosta testified that he met Mr. Carranza on the night before the cocaine sale. During the plea discussions, however, Mr. Acosta stated that he knew Mr. Carranza from Arizona and that Mr. Carranza had brought the cocaine from Arizona. We are thus faced with a situation in which the defendant testified inconsistently with previous statements made in plea discussions.

■ We review the trial court's admission of evidence under the abuse of discretion standard. *Durtsche v. American Colloid Co.,* 958 F.2d 1007, 1011 (10th Cir.1992). Under this standard, "a trial court's decision will not be disturbed unless the appellate court has a definite and firm conviction that the lower court made a clear error of judgment or exceeded the bounds of permissible choice in the circumstances." *United States v. Ortiz,* 804 F.2d 1161, 1164 n. 2 (10th Cir.1986).

There are two evidentiary rules relevant to the issue before us. Federal Rule of Criminal Procedure 11(e)(6)(D) states:

*Inadmissibility of Pleas, Plea Discussions, and Related Statements.*

Except as otherwise provided in this paragraph, evidence of the following is not, in any civil or criminal proceeding, admissible against the defendant who made the plea or was a participant in the plea discussions:

. . . . .

(D) any statement made in the course of plea discussions with an attorney for the government which do not result in a plea of guilty or which result in a plea of guilty later withdrawn.

Fed.R.Crim.P. 11(e)(6)(D).

Federal Rule of Evidence 410 is almost exactly the same as Rule 11(e)(6) and, in fact, incorporates Rule 11(e)(6).

*Inadmissibility of Pleas, Plea Discussions and Related Statements*

Except as otherwise provided in this rule, evidence of the following is not, in any civil or criminal proceeding, admissible against the defendant who made the plea

or was a participant in the plea discussions:

. . . . .

(3) any statement made in the course of any proceedings under Rule 11 of The Federal Rules of Criminal Procedure or comparable state procedure regarding either of the foregoing pleas; or

(4) any statement made in the course of plea discussions with an attorney for the prosecuting authority which do not result in a plea of guilty or which result in a plea of guilty later withdrawn.

Fed.R.Evid. 410.

The Notes following Rule 11 provide a complete discussion of the interaction between Rule 410 and Rule 11. In 1974, the Senate voted to allow "evidence of voluntary and reliable statements made in court on the record *to be used for the purpose of impeaching* the credibility of the declarant *or* in a perjury or false statement prosecution." Fed.R.Crim.P. 11 advisory committee's note (citing Conference Committee Notes, House Report No. 94–414) (emphasis added). Unlike the Senate, however, the House did not permit plea discussions to be used for impeachment purposes. *Id.* The Conference adopted the House version with changes not relevant to the issue here.

Commentators agree that Rule 410 and Rule 11 prohibit use of statements made in the course of plea discussions for impeachment purposes. "[T]he legislative history makes it clear beyond any doubt that Congress, in deleting the impeachment provision from the original rule, intended that Rule 410 should bar the use of pleas and plea related statements for impeachment." 23 Charles A. Wright & Kenneth W. Graham, Jr., Federal Practice and Procedure: Evidence § 5349 at 416 (1980) (footnotes omitted). "Statements made by a defendant in connection with a plea or an offer to plead may not be used substantively or for impeachment in any civil or criminal proceeding against the person who made the plea or offer." 2 Jack B. Weinstein and Margaret A. Berger, Wein-

stein's Evidence ¶ 410[02] at 410–30 (1992) (footnotes omitted).

The government argues that the admission of the evidence here is supported by *United States v. Goodapple,* 958 F.2d 1402 (7th Cir. 1992), contending that case upheld the use of statements made by a testifying defendant during a plea negotiations to impeach his inconsistent trial testimony. However, *Goodapple* is distinguishable. First, the defendant and his attorney there signed a "proffer" letter sent to them by the United States Attorney. The letter requested a proffer of testimony from the defendant and warned that if the defendant "should testify at trial inconsistently with the substance of his proffer 'nothing shall prevent the government from using the substance of the proffer ... at trial for impeachment or in rebuttal testimony.'" *Id.* at 1408. The court held that defendant had thus waived any objection to use of the proffer at trial. Second, the defendant did not object on the basis of Rule 11(e)(6)(D), but argued instead that the use of the proffer information at trial was in violation of his Sixth Amendment rights to counsel. *Goodapple* therefore does not involve an analogous situation and is not relevant to the issue here.

The District of Columbia Circuit, the Second Circuit,[2] and the Ninth Circuit have ruled that statements made during plea negotiations are not admissible for impeachment. In *United States v. Lawson,* 683 F.2d 688 (2d Cir.1982), the defendant testified as to his innocence. The government sought to admit statements he made to an F.B.I. agent while in custody.[3] In these statements, the defendant offered to plead guilty and testify against his co-defendants in exchange for a lower sentence. The court, in holding the statements inadmissable under Rule 11(e)(6)(D), explicitly discussed the rule and the reasons behind its adoption. "Calculations as to use [of statements made during plea discussions] for impeachment purposes will clearly affect the discussions and impair the frank and open atmosphere Rules 410

**2.** These two decisions, which are directly on point, escaped the attention of both parties.

**3.** At the time the defendant was arrested, Rule 11 had not yet been amended to apply only to statements made to prosecuting attorneys.

and 11(e)(6) were designed to foster." *Id.* at 692. The court reviewed the legislative history behind both Rule 410 and Rule 11(e)(6). "We regard this legislative history as demonstrating Congress' explicit intention to preclude use of statements made in plea negotiations for impeachment purposes." *Id.* at 693.

The District of Columbia Circuit reached a similar result in *United States v. Wood*, 879 F.2d 927 (D.C.Cir.1989). There the government used statements made during plea discussions to impeach the defendant's inconsistent trial testimony. Citing the legislative history of Rule 410 and Rule 11(e)(6), the court held that such use was inadmissible. "In considering these rules, Congress had debated and rejected proposals that statements made in connection with an offer to plead guilty be available for impeachment purposes." *Id.* at 936–37.[4]

In *United States v. Mezzanatto*, 998 F.2d 1452 (9th Cir.1993), the Ninth Circuit cited the Second Circuit's analysis of the legislative history of Rules 410 and 11(e)(6) and held that statements made in the course of plea discussions are not admissable for impeachment. *Id.* at 1454. The court strengthened its conclusion by holding that this prohibition cannot be waived by defendants. *Id.* at 1456. The defendant had agreed, before his plea bargaining meeting, that "any statements he made during the meeting could be used to impeach any inconsistent testimony he offered at trial." *Id.* at 1453. The Court of Appeals concluded that "[t]o allow waiver of these rules would be contrary to all that Congress intended to achieve." *Id.* at 1455.

■ We join these circuits and hold that statements made during plea negotiations are inadmissible for impeachment purposes under Rule 11(e)(6)(D). The district court

therefore abused its discretion in allowing Detective Medrano to testify regarding the statements Mr. Acosta made in plea discussions. We must now determine the effect this ruling has on Mr. Acosta's conviction.

### III.

■ Federal Rule of Criminal Procedure 11(h) requires that violations of the plea bargaining rules be disregarded if the error is harmless. The harmless error standard is also applied to violations of Rule 410. *Mezzanatto*, 998 F.2d at 1456. The Supreme Court has stated that a "non-constitutional error is harmless unless it had a 'substantial influence' on the outcome [of the trial] or leaves one in 'grave doubt' as to whether it had such effect." *United States v. Rivera*, 900 F.2d 1462, 1469 (10th Cir.1990) (quoting *Kotteakos v. United States*, 328 U.S. 750, 765, 66 S.Ct. 1239, 1248, 90 L.Ed. 1557 (1946)); *see also, United States v. Perez*, 989 F.2d 1574, 1583 (10th Cir.1993) (en banc).

■ Because Mr. Acosta admitted during direct examination to taking part in the negotiations for the sale of cocaine to Detective Medrano, the admission of the improper impeachment testimony does not affect the outcome of the conspiracy conviction. On the possession count, however, the jury's decision to convict Mr. Acosta required an evaluation of Mr. Acosta's and Mr. Silva's comparative credibility because they gave conflicting versions of the events in question. In response to Mr. Acosta's contention that the evidence was insufficient to convict him of possession, the government itself emphasizes the importance of the credibility of the witnesses in this case.[5] Applee.Br. at 8. "The jury made its credibility choices and drew its inferences from the evidence presented." *Id.* at 10.

---

4. This case involved a letter similar to the one at issue in *Goodapple, supra.* Rather than resolving whether the defendant had waived her right to object to introduction of the evidence, the court chose to vacate the defendant's conspiracy conviction because she had been concurrently sentenced on other counts to which she had pled guilty.

5. Contrary to Mr. Acosta's assertion, the evidence is clearly sufficient to convict him on the

possession count because the jury obviously chose to believe Mr. Silva. In determining whether the evidence is sufficient, we must view it in the light most favorable to the government. *See United States v. Robinson*, 978 F.2d 1554, 1567 (10th Cir.1992). The jury has the responsibility of resolving conflicts in the testimony and judging the credibility of witnesses. *See United States v. Slater*, 971 F.2d 626, 630–31 (10th Cir. 1992).

As in *Lawson*, 683 F.2d at 693, the government's evidence against Acosta on the possession count was "composed of uncertain, eyewitness testimony." *Id.* This testimony was refuted by Acosta on direct examination. Thus, the improper impeachment of Acosta was not an "insignificant event and may well have altered the balance of the credible evidence in the eyes of the jury." *Id.*

Because the inadmissible impeachment evidence affected the credibility determinations made by the jury, we cannot say the error was harmless. We therefore **REVERSE** Mr. Acosta's conviction for possession with intent to distribute and **AFFIRM** Mr. Acosta's conviction for conspiracy.