# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2014-KA-00828-COA

**MARQUIS DESHUNE CHARLESTON A/K/A**        **APPELLANT**
**MARQUIS CHARLESTON**

**v.**

**STATE OF MISSISSIPPI**        **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 05/27/2014 |
| TRIAL JUDGE: | HON. WILLIAM A. GOWAN JR. |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER BY: HUNTER NOLAN AIKENS |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: BARBARA WAKELAND BYRD |
| DISTRICT ATTORNEY: | ROBERT SHULER SMITH |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| TRIAL COURT DISPOSITION: | CONVICTED OF COUNT ONE, ATTEMPTED AGGRAVATED ASSAULT; COUNT TWO, POSSESSION OF A FIREARM BY A FELON; AND COUNT THREE, FELONY FLEEING, AND SENTENCED ON ALL THREE COUNTS AS A HABITUAL OFFENDER WITHOUT THE POSSIBILITY OF PAROLE OR PROBATION TO LIFE IMPRISONMENT IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, WITH THE SENTENCES TO RUN CONSECUTIVELY |
| DISPOSITION: | AFFIRMED - 04/19/2016 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE LEE, C.J., BARNES AND WILSON, JJ.**

**BARNES, J., FOR THE COURT:**

¶1. Marquis Charleston was convicted by Hinds County Circuit Court jury of attempted aggravated assault, possession of a firearm by a felon, and felony fleeing, and sentenced as a habitual offender to three consecutive terms of life imprisonment in the custody of the Mississippi Department of Corrections (MDOC) without the possibility of parole or probation. Charleston now appeals his convictions. Finding no error, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶2. On the afternoon of April 19, 2013, Deputy Timothy Guise of the Hinds County Sheriff's Department was working a roadblock at the intersection of Meadow Lane and Sykes Road in Jackson. Observing a small silver SUV (a 2005 Mercury Mariner) turn around and drive away from the roadblock, he got into his patrol car and pursued the vehicle with his lights and siren activated. According to Deputy Guise, the Mariner ran a traffic light and "avoided a car" at the intersection of Cooper Road and Meadow Lane. He further observed that the SUV was traveling at "an unknown speed" that was "greater than safe." Deputy Guise noted two black males inside the vehicle, who were not wearing seatbelts, and he requested assistance from other officers in stopping the vehicle.

¶3. After pursuing the vehicle through several residential streets in south Jackson, the Mariner finally stopped on Branch Street. The passenger exited the SUV and put his hands in the air. Deputy Guise noted that the passenger "appeared to be a juvenile, about [fourteen, or fifteen] years old." When Deputy Guise started to get out of the patrol car, the Mariner sped off. Deputy Guise pursued the Mariner a few more blocks until it stopped in front of

a residence on Verbena Street. The driver exited the vehicle and ran toward Rosewood Street. Deputy Guise pursued the driver on foot. He chased the driver over a residential fence and ordered him to stop. The driver "brandished a small unknown handgun and fired one shot over his left shoulder" while running. Deputy Guise "hit the ground" and sought cover, losing sight of the man.

¶4. Meanwhile, off-duty State Capitol Police Officer Alfred Phillips, who lived on Rosewood Street, heard a gunshot and saw a man jump over a nearby fence and run toward him. He saw the man drop what appeared to be a weapon, pick it back up, and continue running. Officer Phillips ran into his house to get his vest and weapon, and when he came back outside, he encountered Deputy Guise. The two officers searched the neighborhood for the suspect but could not locate him.[1] Deputy Guise did recover a cell phone at the corner of Verbena Street and Fleetwood Street and turned it in as evidence.[2]

¶5. Deputy Guise and several other deputies went back to the residence on Verbena Street where the Mariner was located. They discovered the home belonged to Charleston's mother. Kenya Mayberry, Charleston's former girlfriend, answered the door and told deputies that he was not there. The Mariner belonged to Mayberry, who told law enforcement she had allowed Charleston to take her vehicle to get gas. She said that he was on his way to the house to return it to her so she could go to work.

---

[1] Police never located or identified the passenger.

[2] No information was recovered from the phone.

3

¶6.    The case was assigned to United States Marshalls Pam Turner and Guy Wyman with the Gulf Coast Regional Fugitive Task Force to investigate Charleston's whereabouts. According to Officer Wyman, Charleston called him on April 23, 2013, saying he was in North Carolina and wanted to surrender. However, Charleston never did so. Two weeks later, on May 10, 2013, a source tipped off law enforcement that Charleston was at his girlfriend's apartment in northeast Jackson. Obtaining a search warrant, officers discovered Charleston hiding in the air-conditioning return unit in the wall. Charleston's girlfriend, Aarimis Armstrong, said that she was not aware of the incident involving Deputy Guise until after the arrest and that Charleston told her that "he did not do it and that the police shot at him."

¶7.    On August 21, 2013, Charleston was indicted on three counts: Count One, attempted aggravated assault in violation of Mississippi Code Annotated section 97-3-7(2)(b) (Supp. 2013); Count Two, possession of a firearm by a previously convicted felon in violation of Mississippi Code Annotated section 97-37-5(1) (Supp. 2013);[3] and Count Three, felony fleeing in violation of Mississippi Code Annotated section 97-9-72(1)(2) (Rev. 2006). The indictment further charged him as a habitual offender under Mississippi Code Annotated section 99-19-83 (Rev. 2007).

¶8.    At trial, both Deputy Guise and Officer Phillips identified Charleston as the man they saw running. Officer Phillips said he recognized Charleston from the neighborhood,

---

[3] It was stipulated at trial that Charleston had prior felony convictions.

although he had not seen him in approximately five years. Charleston testified on his own behalf, claiming that his friend was the driver, and he was actually the passenger in the SUV that day. He further stated that no shots were fired by either him or Deputy Guise. Charleston was convicted on all three counts on May 22, 2014. A separate hearing on sentencing was held May 27, 2014, and the trial court sentenced Charleston as a habitual offender under section 99-19-83 to three consecutive terms of life imprisonment in the custody of the MDOC, without the possibility of parole or probation. Citing several assignments of error, Charleston appeals his convictions and sentences.

## DISCUSSION

I.      **Whether the trial court erred in sentencing Charleston as a habitual offender.**

¶9.     As stated, Charleston was sentenced as a habitual offender under section 99-19-83 to three consecutive terms of life imprisonment. Charleston claims that the State failed to prove beyond a reasonable doubt "that [he] served separate terms of one year or more on the prior convictions the State relied on to support his habitual status." Although defense counsel did not challenge the State's proof at trial, Charleston asserts that this court may address this issue under plain error as it constitutes an illegal sentence. *See Grayer v. State*, 120 So. 3d 964, 969 (¶16) (Miss. 2013) ("An accused has a fundamental right to be free of an illegal sentence.")

¶10.    Section 99-19-83 provides:

Every person convicted in this state of a felony who shall have been convicted

5

twice previously of any felony or federal crime upon charges separately brought and arising out of separate incidents at different times and who shall have been sentenced to and served separate terms of one (1) year or more, whether served concurrently or not, in any state and/or federal penal institution, whether in this state or elsewhere, and where any one (1) of such felonies shall have been a crime of violence, as defined by Section 97-3-2, shall be sentenced to life imprisonment, and such sentence shall not be reduced or suspended nor shall such person be eligible for parole, probation or any other form of early release from actual physical custody within the Department of Corrections.

The indictment charged that Charleston was a habitual offender under section 99-19-83 based on the following convictions: (1) sexual battery on October 29, 2009; (2) receiving stolen goods on February 11, 2010; and (3) felon in possession of a firearm on February 11, 2010. The indictment also attested that he was sentenced to and served "separate terms of one year or more in a penal institution" in Mississippi for each of the three felony convictions. A copy of Charleston's pen pack was introduced as an exhibit at the sentencing hearing.

¶11. "To impose an enhanced sentence as a habitual offender, 'all that is required is that the accused be properly indicted as a habitual offender, that the prosecution prove the prior offenses by competent evidence, and that the defendant be given a reasonable opportunity to challenge the prosecution's proof.'" *Edwards v. State*, 75 So. 3d 73, 76 (¶9) (Miss. Ct. App. 2011) (quoting *Keyes v. State,* 549 So. 2d 949, 951 (Miss. 1989)). Charleston concedes that "[t]he State's evidence showed that [he] served one year or more on his revoked sexual battery sentence[.]"[4] He argues, however, that the evidence failed to establish that he served

---

[4] Charleston pleaded guilty to sexual battery on October 29, 2009. Nine years and one month of his ten-year sentence was suspended, with five years of post-release

one year or more on either the conviction for receiving stolen property or the felon-in-possession-of-a-firearm conviction.

¶12. Charleston pleaded guilty to receiving stolen property and being a felon in possession of a firearm on February 11, 2010. For each count, he was sentenced to five years, with three years and ten months suspended, three years of probation, *and one year, two months, and four days to serve*. The sentences were to run concurrently with his sentence for sexual battery. Charleston's time sheet shows that he was given pre-sentence credit for 327 days of time served – from December 6, 2008, to October 29, 2009. Although his probation order stated that he was to be released on October 29, 2009 for the sexual-battery conviction, the time sheet notes a tentative discharge date of February 11, 2010, and a discharge certificate in the pen pack shows that Charleston was released from MDOC custody on February 22, 2010, for all three convictions noted above. Our supreme court has held that "serving one year or more on concurrent sentences for separate convictions arising out of separate incidents amounts to serving more than one year on each sentence for the purpose of enhanced sentencing under [section] 99-19-83." *Bogard v. State*, 624 So. 2d 1313, 1320 (Miss. 1993). Therefore, we find the State's proof is sufficient to show that Charleston served more than one year (approximately fourteen months) on both his conviction for receiving stolen property and his conviction for possession of a firearm by a felon.

---

supervision. His suspended sentence was revoked on August 28, 2013, due to the current charges. Therefore, at the time of his instant conviction, he had served more than one year on the conviction for sexual battery.

7

**II. Whether prosecutorial misconduct during closing argument deprived Charleston of his fundamental right to a fair trial.**

¶13. Charleston contends that the prosecutor prejudiced his defense "by impermissibly stating material facts not in evidence, vouching for the credibility of the State's witnesses, and misstating the law" during closing arguments. However, defense counsel made no objections to any of referenced comments. Therefore, "[a]bsent a showing of prejudice, [the] failure to make a timely objection results in a procedural bar." *Smith v. State*, 797 So. 2d 854, 857 (¶11) (Miss. 2001).

¶14. Charleston claims that the State's comment during closing argument that Officer Phillips "had seen [Charleston] before many times as being a person that lived in the community" was an impermissible statement of facts not in the evidence. Charleston argues that Officer Phillips testified that he had seen him only on one occasion approximately five years prior and, thus, the prosecution's statement was prejudicial "because Charleston's identity as the driver of the Mariner was a critical issue at trial[.]" Generally, prosecutors are afforded "wide latitude in making their closing arguments." *Smith v. State*, 877 So. 2d 369, 393 (¶76) (Miss. 2004) (citing *Wiley v. State,* 691 So. 2d 959, 965 (Miss. 1997)). However, "[a]rguing statements of fact which are not in evidence or necessarily inferable from facts in evidence is error when those statements are prejudicial." *Ross v. State*, 954 So. 2d 968, 1002 (¶74) (Miss. 2007) (citation omitted). We find the prosecutor's comment regarding Officer Phillips's familiarity with Charleston was a correct statement of facts as presented at trial and resulted in no prejudice. Officer Phillips responded affirmatively to the State's

8

questions that this "wasn't the first time [he had] ever seen [Charleston] before" and that he "recognize[d] [Charleston] as being the person that lived a street over from [Officer Phillips]." What Charleston is referring to is Officer Phillips's testimony that he had not seen Charleston for approximately five years; Officer Phillips never stated he had only seen Charleston once.

¶15. Charleston further says that the State impermissibly stated facts not in the evidence when it said the cell phone recovered "was found back by the house on Verbena, not on Rosemary Street." He contends that the location of where the cell phone was recovered "was significant because the evidence was such that [a] reasonable juror could have concluded that it was [Deputy] Guise who fired the shot that [Officer] Phillips heard, and the object that [Deputy] Guise and [Officer] Phillips allegedly saw the driver possess at the time was a cell phone, not a firearm." We also find no merit to this claim. Investigator Trevis Banks testified that the cell phone was recovered by Deputy Guise from the "corner of Verbena and Fleetwood." It was marked as a exhibit and entered into evidence with this designation as well.

¶16. Charleston says that the prosecution impermissibly vouched for the credibility of its witnesses during closing argument when it stated that Charleston's testimony "stands in the face of over a half dozen witnesses, witnesses that have no reason to lie on him, police officers that I can promise you wouldn't risk their career to put this guy in jail and let the real shooter get away." This Court has held that "a prosecutor is prohibited from stating his

personal opinion as to the veracity of a witness[.]" *Palmer v. State,* 878 So. 2d 1009, 1012 (¶9) (Miss. Ct. App. 2004).

¶17.    Yet, as the State observes, "the prosecution is entitled to argue the credibility of its witnesses after it has been challenged." *Brown v. State*, 798 So. 2d 481, 492 (¶10) (Miss. 2001) (citing *Taylor v. State,* 672 So. 2d 1246, 1269 (Miss. 1996)).  In this case, defense counsel initially brought up the issue of Deputy Guise's veracity during cross-examination. Questioning him, defense counsel asked:  "Isn't it true there really wasn't a gun, you didn't see it and you got scared and that [Charleston] never shot at you?"  Deputy Guise responded that Charleston had "a revolver or weapon of some sort[.]"  Additionally, during cross-examination by the State, Charleston asserted in his testimony that the other witnesses were lying.

> Q.    But you heard [Deputy Guise] here point at you and say, "That's the man that shot at me"; isn't that right?
>
> . . . .
>
> A.    Yeah, I heard him say that.
>
> Q.    Okay.  So he's lying?
>
> A.    Yes, sir, I guess so.  That' what – he['s] got to be.  He['s] got to be.
>
> Q.    Okay. [Deputy Guise is] a liar.  We got him as a liar; is that correct?
>
> A.    Yes, sir.
>
> . . . .
>
> Q.    Okay.  And [Officer Phillips] said he saw you drop a gun.  He's got to

be lying, too?

A.    Yeah.

Q.    That's another person you've never met that's lying; is that right?

Charleston went on to respond that the other witnesses were also lying. Therefore, we find the prosecution's comments were not an impermissible comment on the credibility of the witnesses.

¶18.   Finally, Charleston claims that the prosecution misstated the law during closing argument by telling the jury that "just pointing that firearm in his direction and pulling the trigger constitutes an attempt under attempted aggravated assault." He claims this statement "impermissibly gave the jury the impression that Charleston was guilty as a matter of law if it determined simply that Charleston fired a shot in [Deputy] Guise's general direction" and resulted in prejudice to the defense. As already noted, defense counsel did not object to the prosecutor's comments, procedurally barring this issue from consideration, absent a showing of prejudice. *See Smith*, 797 So. 2d at 857 (¶11).

¶19.   "To reverse on a misstatement of law, there must first be a misstatement of the law, and second, the misstatement must make the trial fundamentally unfair." *Holland v. State*, 705 So. 2d 307, 346 (¶157) (Miss. 1997) (citing *United States v. Goodapple,* 958 F. 2d 1402, 1409 (7th Cir. 1992)). Furthermore, a prosecutor's misstatement of the law "may also be mitigated if the evidence is sufficient to support the jury's finding and the trial court instructs the jury that counsel's arguments are not evidence." *Id.* (citing *United States v. Fierro,* 38

11

F.3d 761, 771 (5th Cir. 1994)).

¶20. The record shows that the jury was properly instructed as to the elements of attempted aggravated assault in Jury Instruction S-1. Reading the prosecution's closing argument, outlining the elements of attempted aggravated assault in context, we find no merit to Charleston's claim. The prosecution stated:

> If you'll read your [jury] instruction carefully, it says "did attempt to cause bodily injury." And just pointing that firearm in [Deputy Guise's] direction and pulling the trigger constitutes an attempt under attempted aggravated assault. That he did so with a deadly weapon by shooting a firearm while [Deputy] Guise was acting in the scope of his duty as a law enforcement officer. We know that [Deputy] Guise was on duty. I don't think that's in dispute in this case.

Thus, we find the prosecution properly stated that the jury must find that the firing of the gun by Charleston constituted an attempt to cause bodily injury. Additionally, the trial court instructed the jury that arguments by counsel "are not evidence."

¶21. As Charleston has not shown that he suffered any prejudice as a result of the prosecution's comments during closing arguments, this issue is procedurally barred.

### III. Whether Charleston received ineffective assistance of counsel.

¶22. Regarding the claims raised in Issues I and II, Charleston argues that his counsel's failure to challenge the State's proof under section 99-19-83 and to object to the prosecution's comments during closing argument constituted ineffective assistance of counsel. To prevail on his claim of ineffective assistance of counsel, Charleston must prove that (1) his counsel's performance was deficient, and (2) the deficiency prejudiced his

defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). As we have found no reversible error associated with those issues, we find that counsel's performance was not deficient and Charleston is not entitled to any relief. Furthermore, a trial counsel's decision "to make particular objections fall[s] within the purview of the attorney's trial strategy and 'cannot give rise to an ineffective[-]assistance[-]of[-]counsel claim.'" *Moss v. State*, 977 So. 2d 1201, 1214 (¶31) (Miss. Ct. App. 2007) (quoting *Carr v. State,* 873 So. 2d 991, 1003 (¶27) (Miss. 2004)).

¶23. Charleston additionally contends that his counsel was ineffective "in failing to request a limiting instruction to explain to the jury the limited permissible use of the stipulated fact that Charleston was a [previously] convicted felon." He claims that this failure "prejudiced his defense by permitting the jury to consider his prior bad acts for impermissible purposes." This Court has held:

> We are . . . mindful that counsel's decision whether to request a limiting instruction regarding a part of the evidence against the accused may also be a part of trial strategy. Our supreme court has pointed out that a limiting instruction can actually focus the jury's attention on sensitive information. We have held that a lawyer's failure to request such a limiting instruction as a tactical decision does not amount to ineffective assistance.

*Moss*, 977 So. 2d at 1214 (¶32) (citations omitted).

¶24. Accordingly, we find that Charleston's claims of ineffective assistance of counsel lack merit, and we affirm his convictions and sentences.

¶25. **THE JUDGMENT OF THE CIRCUIT COURT OF HINDS COUNTY OF CONVICTION OF COUNT ONE, ATTEMPTED AGGRAVATED ASSAULT; COUNT TWO, POSSESSION OF A FIREARM BY A FELON; AND COUNT**

**THREE, FELONY FLEEING, AND SENTENCES ON ALL THREE COUNTS AS A HABITUAL OFFENDER WITHOUT THE POSSIBILITY OF PAROLE OR PROBATION TO LIFE IMPRISONMENT IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, WITH THE SENTENCES TO RUN CONSECUTIVELY, IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO HINDS COUNTY.**

**LEE, C.J., GRIFFIS, P.J., ISHEE, CARLTON, FAIR, WILSON AND GREENLEE, JJ., CONCUR.. JAMES, J., CONCURS IN PART WITHOUT SEPARATE WRITTEN OPINION. IRVING, P.J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION.**